**IN THE UNITED STATES DISTRICT COURT**
**FOR THE DISTRICT OF COLORADO**

Civil Action No. 12-cv-00320-REB-CBS

JOHN SENI, Derivatively on Behalf of CIBER, INC.,

        Plaintiff,

    v.

DAVID C. PETERSCHMIDT,
CLAUDE J. PUMILIA,
PETER H. CHEESBROUGH,
BOBBY G. STEVENSON,
JEAN-FRANCOIS HEITZ,
PAUL JACOBS, STEPHEN S. KURTZ,
KURT J. LAUK,
ARCHIBALD J. MCGILL,
and JAMES C. SPIRA,

        Defendants.

and

CIBER, INC.,

    Nominal Defendant.

---

**DEFENDANTS' MOTION TO DISMISS THE AMENDED COMPLAINT**

---

# TABLE OF CONTENTS

**Page**

SUMMARY OF ARGUMENT....................................................................................1

FACTUAL BACKGROUND....................................................................................2

    A.    The Parties...................................................................................2

    B.    Ciber's Guidance for 2011 ............................................................3

    C.    The Litigation...............................................................................4

ARGUMENT ......................................................................................................5

I.     PLAINTIFF FAILS TO PLEAD THAT DEMAND IS EXCUSED ........................6

    A.    Demand Futility under Delaware Law .......................................................6

    B.    Plaintiff Fails to Allege That a Majority of the Current Board Is Interested or Lacks Independence ...........................................................8

          1.    The Amended Complaint Still Fails to Advance "Particularized Facts" Regarding Ciber's 2011 Guidance Sufficient to Excuse Demand ...............................................................................8

          2.    Plaintiff Cannot Allege a Substantial Threat of Personal Liability for *Caremark* Claims ...........................................................11

                a.    Oversight Allegations Regarding Internal Controls........................11

                b.    Oversight Allegations Regarding Contracts with the Pennsylvania Turnpike ....................................................12

          3.    Plaintiff Cannot Establish a Substantial Likelihood of Liability for Decisions Relating to Compensation, Incentive Awards, or Director Benefits ..............................................................................14

                a.    Compensation of Mr. Cheesbrough and Mr. Hadzi ......................15

                b.    Compensation of Mr. Peterschmidt.................................16

                c.    Letter Agreement with Mr. Stevenson.............................17

                d.    Amendment of 2004 Incentive Plan ...............................18

    C.    Plaintiff Fails to Allege Facts Creating a Reasonable Doubt as to the Independence of at Least Five Directors ..................................................19

II.    PLAINTIFF FAILS TO STATE A CLAIM..............................................................20

A.      Plaintiff Fails to State a Breach of Fiduciary Duty Claim Against the
        Individual Defendants ................................................................................21

        1.      Plaintiff Fails To State a Claim for Breach of Loyalty ...................................21

B.      Plaintiff Fails to State a Claim for Unjust Enrichment ...............................................22

C.      Plaintiff Fails to State a Claim for Corporate Waste ..................................................23

        1.      Termination Agreements of Messrs. Cheesbrough and Hadzi..................23

        2.      Peterschmidt Compensation and Stock Option Plan; Stevenson
                Letter Agreement............................................................................................24

        3.      Amendments to the 2004 Incentive Plan......................................................25

        4.      Legal Costs and Liabilities ............................................................................25

CONCLUSION.....................................................................................................................26

## TABLE OF AUTHORITIES

**Page(s)**

## CASES

*Andropolis v. Snyder,* No. 05-cv-01563, 2006 WL 2226189 (D. Colo. Aug. 3, 2006) ........................................................................................................................10

*Aronson v. Lewis*, 473 A.2d 805 (Del. 1984), *overruled in part on other grounds by Brehm v. Eisner*, 746 A.2d 244 (Del. 2000)...................................7, 10

*Bell Atl. Corp. v. Twombly*, 550 U.S. 544 (2007) ..............................................20

*Braddock v. Zimmerman*, 906 A.2d 776 (Del. 2006) .........................................8

*Decker v. Clausen*, Nos. CIV. A. 10684, 10685, 1989 WL 133617 (Del. Ch. Nov. 6, 1989) .....................................................................................................10

*Desimone v. Barrows*, 924 A.2d 908 (Del. Ch. 2007) .......................... 10, 11, 14

*Garcia v. Carrion*, No. CIV. 09-1507, 2010 WL 3662593 (D.P.R. Aug. 11, 2010).........................25

*Grobow v. Perot*, 539 A.2d 180 (Del. 1988), *overruled in part on other grounds by Brehm v. Eisner*, 746 A.2d 244 (Del. 2000)............................19

*Guttman v. Huang*, 823 A.2d 492 (Del. Ch. 2003) ...........................................11

*In re 3Com Corp. S'holder Litig.*, No. C.A. 16721, 1999 WL 1009210 (Del. Ch. Oct. 25, 1999) ................................................................................ 18, 23, 24

*In re Accuray, Inc. S'holder Deriv. Litig.*, 757 F. Supp. 2d 919 (N.D. Cal. 2010) ...........................23

*In re Caremark Int'l Inc. Deriv. Litig.*, 698 A.2d 959 (Del. Ch. 1996)................11

*In re Computer Scis. Corp. Deriv. Litig.*, No. CV-06-05288, 2007 WL 1321715 (C.D. Cal. Mar. 26, 2007)...................................................................20

*In re Dow Chem. Co. Deriv. Litig.*, No. CIV. A. 4349, 2010 WL 66769 (Del. Ch. Jan. 11, 2010) ...........................................................................................14

*In re United Tel., Inc. Sec. Litig.*, No. 90-2251, 1993 WL 100202 (D. Kan. Mar. 4, 1993) .........................................................................................................25

*In re Walt Disney Co. Deriv. Litig.*, 731 A.2d 342 (Del. Ch. 1998), *aff'd in part, rev'd in part on other grounds by Brehm v. Eisner*, 746 A.2d 244 (Del. 2000).............. 14, 15, 17

*Kenney v. Koenig*, 426 F. Supp. 2d 1175 (D. Colo. 2006)............................7, 10, 11, 12

*Lemond v. Manzulli*, No. 05 CIV. 2222, 2009 WL 1269840 (E.D.N.Y. Feb. 9, 2009) ........................................................................................................25

*Nemec v. Shrader*, 991 A.2d 1120 (Del. 2010) ................................................................23

*Rales v. Blasband*, 634 A.2d 927 (Del. 1993)............................................................7, 20

*Rist v. Stephenson*, No. CIV. A. 05-CV-02326, 2007 WL 2914252 (D. Colo. Oct. 1, 2007) ...........................................................................................................13

*Seinfeld v. Slager*, No. CIV. A. 6462, 2012 WL 2501105 (Del. Ch. June 29, 2012)...............16, 18

*Seminaris v. Landa*, 662 A.2d 1350 (Del. Ch. 1995).........................................................7

*Sherman v. Ryan*, 911 N.E.2d 378 (Ill. App. Ct. 2009) ....................................................23

*Stone ex rel. AmSouth Bancorp v. Ritter*, 911 A.2d 362 (Del. 2006) ...........................................21

*Wood v. Baum*, 953 A.2d 136 (Del. 2008) ..............................................................10, 21

*Zucker v. Andreesen*, No. CIV. A. 6014, 2012 WL 2366448 (Del. Ch. June 21, 2012) ...........................................16, 18

## STATUTES

8 Del. C. § 157 ........................................................................................................24

8 Del. Ch. § 102(b)(7)..............................................................................................21

## RULES

Fed. R. Civ. P. 8................................................................................ 1, 6, 18, 25

Fed. R. Civ. P. 12(b)(6)...........................................................................1, 20

Fed. R. Civ. P. 23.1.............................................................................*passim*

Individual defendants David C. Peterschmidt, Claude J. Pumilia, Peter H. Cheesbrough, Bobby G. Stevenson, Jean-Francois Heitz, Paul Jacobs, Stephen S. Kurtz, Kurt J. Lauk, Archibald J. McGill, and James C. Spira (collectively, the "Individual Defendants") and nominal defendant Ciber, Inc. ("Ciber", or the "Company") (with the Individual Defendants, "Defendants"), respectfully submit this Motion to Dismiss the Amended Verified Shareholder Derivative Complaint ("Amended Complaint" or "¶") for failure to plead demand futility under Fed. R. Civ. P. 23.1, failure to satisfy Fed. R. Civ. P. 8, failure to state a claim under Fed. R. Civ. P. 12(b)(6), and failure to meet the substantive requirements of controlling Delaware law.  Defendants certify that they conferred on this motion with counsel for Plaintiff as required by D.C.COLO.LCivR 7.1A. Plaintiff objects to the relief Defendants seek.

## SUMMARY OF ARGUMENT

This Court granted Defendants' previous Motion to Dismiss, finding that Plaintiff failed to make sufficiently specific allegations as to each individual defendant.  The Court further found that Plaintiff's "group pleading" did not meet the requirements of Rule 8, as refined by *Iqbal* and *Twombly*.  Plaintiff has not cured these defects in the Amended Complaint.  The Court should therefore dismiss it again for the same reason.

The Court should likewise dismiss the Amended Complaint because Plaintiff has failed to plead that demand is excused.  Plaintiff does not plead an affirmative board action relating to the allegedly "false and misleading" statements at issue; Plaintiff pleads nothing more than that the Board acquiesced in, or failed to correct, the alleged misstatements.  To the extent Plaintiff does establish affirmative board action with his new allegations regarding compensation, equity grants and plans, and director benefits, Plaintiff provides no facts that show the decisions were not valid

exercises of business judgment.

The Court directed Plaintiff to provide specifics as to the particular knowledge, action, or motivation of each individual Defendant.  Plaintiff instead has cast an even wider net, adding allegations about a sales executive in Pennsylvania with no apparent ties to the Board, and no plausible connection to the missed earnings that this case is about.  Plaintiff's revisions to the original allegations do not solve the "group pleading" problem identified by the Court, but simply divide the single group of "Individual Defendants" into two sub-groups — one sub-group of officers and another of directors.  Plaintiff also continues to impute knowledge to the directors based solely on their board or committee membership.

Plaintiff likewise fails to establish that any Defendant had the intent required to state a claim for breach of fiduciary duty.  Nor does Plaintiff make out a claim for unjust enrichment or waste, because he cannot allege that Ciber's agreements for the professional services of its officers and directors lacked consideration.

Plaintiff does not show that Ciber's Board would be unable to consider a demand impartially or that the Board failed to exercise appropriate business judgment.  Plaintiff's allegations also fail to state a claim against the Individual Defendants.  Defendants therefore respectfully request that the Court dismiss Plaintiff's Amended Complaint in its entirety with prejudice.

## FACTUAL BACKGROUND

### A.    The Parties

Ciber is an information technology consulting, services, and outsourcing company headquartered in Greenwood Village, Colorado, and incorporated in Delaware.  ¶ 18.  The Ciber

Board consists of nine directors:  David C. Peterschmidt, Bobby G. Stevenson, Jean-Francois Heitz, Paul Jacobs, Stephen S. Kurtz, Dr. Kurt J. Lauk (Ph.D.), Archibald J. McGill, James C. Spira, and Michael Boustridge, who joined the Board on March 22, 2013 (collectively, the "Board" or "Director Defendants").[1]  ¶¶ 19, 22-28; Ex. A at 16-20.[2]  All are independent directors (*i.e.*, not employed by Ciber) except Mr. Peterschmidt, Ciber's Chief Executive Officer ("CEO").  *See id.*  In addition to Mr. Peterschmidt, the other officer defendants include:  Claude J. Pumilia, Ciber's Chief Financial Officer ("CFO"), and Peter H. Cheesbrough, Ciber's former CFO.  ¶¶ 19-21.

Plaintiff does not specify when he purchased Ciber stock.  He alleges that he "is a shareholder of Ciber common stock, and has continuously held throughout the Relevant Period." ¶ 17.

**B.    Ciber's Guidance for 2011**

On December 15, 2010, Ciber announced that the Company would conduct a company-wide restructuring or "transformation" of its organizational and management structure, beginning in fiscal year 2011.  ¶ 30.  The purpose of the transformation was to enable the Company to focus on higher-margin business in order to achieve long-term revenue growth.  *Id.*  The transformation also sought to improve reporting and accountability at a managerial level.  *Id.* Mr. Peterschmidt emphasized regularly on conference calls with investors that 2011 was going to be a "transition year" for the Company.  Ex. B at 18.

On December 15, 2010, the Company also announced guidance for both long-term

---

[1] Mr. Boustridge has not been named as a defendant in this action.

[2] All references to "Ex. __" refer to exhibits attached to the accompanying Declaration of Elizabeth C. Peterson in Support of Defendants' Motion to Dismiss the Amended Complaint.  The Court may consider these exhibits in ruling on this motion.  *See* Request for Judicial Notice in Support of Defendants' Motions To Dismiss.

growth and fiscal year 2011.  Ex. C; Ex. D at 1.  The Company gave the following guidance for 2011: revenue Growth to exceed 4%; gross profit margin to exceed 25.5%; operating income to exceed 3.5%; and earnings per share to exceed $0.30.  *Id.*

The Company also specifically reviewed then-current problems with its operational organization.  *See* Ex. C at 18.  Ciber regularly warned investors about potential risks with its fixed-price contracts.  *See, e.g.*, Ex. E at 10; Ex. F at 19.  Far from "steadfastly rebuff[ing] notions that the overhaul would adversely affect CIBER's financial performance going forward" (¶ 4), Messrs. Peterschmidt and Cheesbrough discussed in detail the risks involved with the Company's legacy fixed-price projects, as well as issues related to the Company's internal controls, during analyst calls on December 15, 2010, February 22, 2011, and May 3, 2011.  Ex. B at 3, 6, 16; Ex. G at 2, 7; Ex. H at 2.

On August 3, 2011, the Company reported its results for the second quarter of 2011, and suspended guidance for 2011.  The Company announced that its overall performance for 2011 had been adversely affected by issues in its North American business and on its balance sheet, and stated: "Specifically, as a result of a more disciplined approach to managing Ciber, we identified five fixed-price contracts signed in 2009 or earlier in the United States that no longer carry the same level of profitability and thus diminished earnings in the quarter."  Ex. I at 1.

## C.    The Litigation

On October 28, 2011, plaintiff Burt Weston filed a securities class action lawsuit against Ciber and Messrs. Peterschmidt, Pumilia, and Cheesbrough, alleging violations of the Securities

and Exchange Act of 1934 (the "Class Action").  Ex. J.[3]  On February 7, 2012, Plaintiff in the

instant case filed a purported shareholder derivative complaint based on nearly identical factual

allegations against the Individual Defendants for breach of fiduciary duty and unjust enrichment.

Defendants moved to dismiss the Complaint for failure to make a demand or allege demand

futility under Fed. R. Civ. P. 23.1, and for failure to state a claim.  In an Order dated March 22,

2013 ("Order"), the Court granted the Motion to Dismiss with leave to amend.  Plaintiff filed an

Amended Complaint on April 26, 2013.

The Amended Complaint seeks to allege breach of fiduciary duty and unjust enrichment

as before, but adds a new count for corporate waste.  ¶¶ 138-42.  In addition to the original

allegations challenging statements made regarding Ciber's 2011 guidance, Plaintiff has added:

(i) allegations related to criminal charges brought against a former Ciber executive regarding

contracts with the Pennsylvania Turnpike Commission; and (ii) allegations regarding officer

compensation, equity awards, director benefits, and amendments to Ciber's equity incentive

plan.[4]

## ARGUMENT

The Amended Complaint should be dismissed because Plaintiff has failed to cure the

pleading defects the Court identified when granting Defendants' first Motion to Dismiss.  In its

Order, the Court held that Plaintiff's Complaint failed to make sufficiently specific allegations as to

---

[3] Lead Plaintiff Weston filed a First Amended Consolidated Complaint in the securities action on June 7, 2012.  Ex. K.  Defendants in that action filed a Motion to Dismiss the First Amended Consolidated Complaint on April 12, 2012, and that motion is still undecided and pending.  (Dkt. #30).

[4] A "red-line" comparison of the original Complaint and the Amended Complaint is attached as Ex. U.

each individual defendant.[5]   The Court further found that Plaintiff's "group pleading" did not meet the requirements of Rule 8.  *See id.*

Plaintiff has not cured these defects in the Amended Complaint.  The Amended Complaint still fails to allege what each individual defendant knew, what action he took, or what his motivation was.  It addresses the "group pleading" problem raised by the Court with merely cosmetic changes, such as dividing the group of "Individual Defendants" from the original Complaint into one group that allegedly "made" the original statements regarding the 2011 guidance, and another group of outside directors who allegedly "approved" the statements. While the amended version of the original allegations regarding Ciber's 2011 guidance may now list all of the Individual Defendants' names, the revised allegations still do not establish how each individual Defendant came to know the challenged statements were false, as alleged.  The Amended Complaint continues to attribute knowledge of events collectively, and thus continues to fall short of the requirements of both Rule 8 and Rule 12.  Likewise, Plaintiff's pleading fails to provide the particularized facts required under Rule 23.1.

## I.   PLAINTIFF FAILS TO PLEAD THAT DEMAND IS EXCUSED

### A.   Demand Futility under Delaware Law

As this Court noted in its order dismissing the original Complaint, the right of a stockholder to prosecute a derivative action under Delaware law is limited to "situations where the stockholder has demanded that the directors pursue the corporate claim and they have

---

[5] *See, e.g.*, Order at 5-6, 9 ("[T]he plaintiff's claims against the individual defendants must be dismissed because the plaintiff fails to make sufficiently specific allegations addressing each defendant individually . . . . Such general group pleading is not sufficient to present a plausible claim that a particular individual has particular knowledge, a particular motivation, or took a particular action.").

wrongfully refused to do so or where demand is excused because the directors are incapable of making an impartial decision regarding such litigation." Order at 7 (quoting *Rales v. Blasband*, 634 A.2d 927, 932 (Del. 1993)). Demand is excused only if the plaintiff pleads particularized facts creating a reasonable doubt that: (1) a majority of directors is disinterested and independent; or (2) the transaction was the product of a valid exercise of business judgment. *Aronson v. Lewis*, 473 A.2d 805, 814 (Del. 1984), *overruled on other grounds by Brehm v. Eisner*, 746 A.2d 244 (Del. 2000).[6] A director is considered to be interested if he will be "materially affected, either to his benefit or detriment, by a decision of the board, in a manner not shared by the corporation and the stockholders." *Seminaris v. Landa*, 662 A.2d 1350, 1354 (Del. Ch. 1995). A director is considered to be independent if his decision is based on "the corporate merits of the subject before the board rather than extraneous considerations or influences." *Aronson*, 473 A.2d at 816.

Where no specific board action is challenged, a plaintiff must plead "particularized facts creating a reasonable doubt that a majority of the Board would be disinterested or independent in making a decision on a demand." *Rales*, 634 A.2d at 930, 934.[7] This Court found that Plaintiff had challenged no specific board action in his original Complaint, and held that the *Rales* test therefore applied to his claims.[8] The *Rales* test similarly applies to Plaintiff's new allegation that the Board knew that statements regarding 2011 guidance were false or misleading because of

---

[6] Ciber is a Delaware corporation. ¶ 18. Delaware law therefore determines whether demand is excused. *See Kenney v. Koenig*, 426 F. Supp. 2d 1175, 1180 (D. Colo. 2006). Delaware law likewise governs Plaintiff's claims for breach of fiduciary duty, unjust enrichment, and corporate waste. *See* Order at 3.

[7] *See* Order at 8.

[8] *See id.* at 9.

the prior misconduct of a Ciber executive related to contracts with the Pennsylvania Turnpike

Commission.[9]  Plaintiff's new allegation that the Board wasted company assets by granting

certain compensation, equity, and benefits packages to current and former Ciber executives, and

by amending the 2004 Incentive Plan, implicates specific Board action, and therefore the

*Aronson* test applies to this claim only.[10]

> **B.    Plaintiff Fails to Allege That a Majority of the Current Board Is Interested or Lacks Independence**

Plaintiff must establish that five of the nine members of Ciber's current Board are

interested or dependent.[11]  Eight of the nine Ciber directors — *i.e.*, more than half — are neither

employed by the Company nor involved in its day-to-day management.[12]  Plaintiff cannot raise a

reasonable doubt as to the disinterestedness of any of the Director Defendants, let alone a

minimum of five of those directors.

> **1.    The Amended Complaint Still Fails to Advance "Particularized Facts" Regarding Ciber's 2011 Guidance Sufficient to Excuse Demand**

Plaintiff still fails to identify a specific public statement of present fact that was untrue —

and known to be untrue — when made.  Plaintiff still fails to allege what each individual

defendant knew, what action he took, and what his motivation was.  The Amended Complaint

---

[9] *See, e.g.*, ¶ 9.

[10] ¶¶ 10-11.

[11] On March 15, 2012, Michael Boustridge joined the Board of Directors at Ciber.  Ex. L.  The total number of directors who would therefore consider a demand by Plaintiff is now nine.  *See Braddock v. Zimmerman*, 906 A.2d 776, 786 (Del. 2006) ("Where . . . a plaintiff's complaint has been dismissed and the plaintiff is given leave to file an amended complaint . . . the plaintiff must make a demand on the board of directors in place at that time the amended complaint is filed or demonstrate that demand is legally excused as to that board.").

[12] Ex. A at 16-20.

addresses the "group pleading" problem raised by the Court with merely cosmetic changes to the original allegations regarding the 2011 guidance.  For example, Plaintiff changes an allegation quoted by the Court from "the above statements made by the Defendants were materially false and misleading" to "[t]he above statements made by Defendants *Peterschmidt, Cheesbrough and Pumilia and approved by Defendants Jacobs, Kurtz, Lauk, McGill, Spira, and Stevenson* were materially false and misleading . . . ."  ¶¶ 39, 44 (emphasis added); *see* Order at 5.  In pleading counts for breach of fiduciary duty, unjust enrichment, and corporate waste, Plaintiff continues to make allegations against the whole group of "Individual Defendants", and makes no distinction between those who allegedly made the statements and those who did not.  *See* ¶¶ 127-42; *see also* ¶ 7 ("each of the Individual Defendants" knew that statements regarding Ciber's internal controls were false or misleading simply "due to their positions as officers and directors of the Company").[13]

Throughout the Amended Complaint, Plaintiff generally divides the group of "Individual Defendants" from the original Complaint into those who allegedly "made" the original statements regarding the 2011 guidance, and those who allegedly only: "approv[ed]" the statements (¶¶ 9, 43, 44, 130); "acknowledged and approved" the statements (¶¶ 10, 31); failed to "correct" the statements (¶¶ 3, 13, 84, 107, 108, 110-14, 116, 117, 119, 121, 122, 130); "reviewed and authorized" the statements (¶¶ 103, 107, 110, 113, 116, 119, 121); "authorized" the statements

---

[13] As in the initial Complaint, Plaintiff's "group pleading" leads to obvious inconsistencies in the Amended Complaint.  Plaintiff alleges that Director Heitz joined the Board in June of 2011 (¶ 28), but then alleges that Mr. Heitz, defined as one of the "Individual Defendants" (¶ 29), embarked on the transformation of Ciber in late 2010 (¶ 30) — *i.e.,* before Mr. Heitz was at the Company.  Similarly, Plaintiff claims Mr. Heitz is likely to be liable for "fail[ing] and/or refus[ing]" to correct allegedly false or misleading statements made before his tenure.  *See* ¶¶ 28, 32-45, 108.

(¶¶ 13, 111); "endorsed" the statements (¶ 6); or "signed" SEC filings containing statements (¶¶ 5, 39, 43), etc.  Plaintiff's repeated claims that directors "approved" statements do not establish that demand is excused.  Delaware courts are clear that a "substantial likelihood of liability" cannot be premised upon such nebulous allegations.  *See Aronson*, 473 A.2d at 817 ("In Delaware mere directorial approval of a transaction, absent particularized facts supporting a breach of fiduciary duty claim, or otherwise establishing the lack of independence or disinterestedness of a majority of directors, is insufficient to excuse demand.").[14]

Plaintiff includes no new allegations in the Amended Complaint to indicate how each particular outside director came to know of the issues regarding the profitability of the fixed-price projects, what actions each took, or why.[15]  Plaintiff attempts to show a likelihood of liability for five directors based on their membership on the Audit Committee, citing to the Charter of the Committee as ostensible evidence of member responsibilities, and thus, of likely member misconduct.  Courts applying Delaware law are clear, however, that such allegations do not demonstrate a substantial likelihood of liability.  *See Andropolis v. Snyder*, No. 05-cv-01563, 2006 WL 2226189, at *14 (D. Colo. Aug. 3, 2006) ("simply because the . . . complaint lists a body of rules that may have been violated and the director defendants membership during that time, that

---

[14] *See also Wood v. Baum*, 953 A.2d 136, 142 (Del. 2008) (Under Delaware law, "[t]he Board's execution of . . . financial reports, without more, is insufficient to create an inference that the directors had actual or constructive notice of any illegality."); *Decker v. Clausen*, Nos. CIV. A. 10684, 10685, 1989 WL 133617, at *2 (Del. Ch. Nov. 6, 1989) (conclusory allegations that "directors participated in and/or approved the alleged wrongs . . . have been rejected consistently by our courts"); *Kenney*, 426 F. Supp. 2d at 1183 (director's membership on audit committee during the relevant period does not suffice to create a substantial likelihood of liability).

[15] *See Desimone v. Barrows*, 924 A.2d 908, 943 (Del. Ch. 2007) ("Delaware law does not permit the wholesale imputation of one director's knowledge to every other for demand excusal purposes.").

is not sufficient to create a substantial likelihood of liability").[16]

Plaintiff's amendments to the original allegations about the fixed-price contracts and 2011 guidance thus do not provide the "particularized facts" to establish that a majority of the Board could not impartially consider a demand under Fed. R. Civ. P. 23.1.

### 2. Plaintiff Cannot Allege a Substantial Threat of Personal Liability for *Caremark* Claims

The Amended Complaint falls far short of the demanding standard required to establish interestedness based on oversight claims.[17]  Plaintiff summarily claims that the Individual Defendants breached their fiduciary duties by failing to exercise proper oversight over the issuance of the Company's financial and other public statements related to 2011 guidance and the Company's internal controls.[18]  Plaintiff does not allege, however, that any Individual Defendant had "clear notice" of improprieties, nor does Plaintiff provide any facts whatsoever that would establish the state of mind component required by *Caremark*: *i.e.*, that the Individual Defendants acted with  "conscious disregard," "disloyalty," or "bad faith."[19]

### a. Oversight Allegations Regarding Internal Controls

Courts are clear that the mere fact that a company eventually realizes that its internal controls have been ineffective does not by itself show a "sustained or systematic failure of the board to exercise oversight" under *Caremark*.  *Kenney*, 426 F. Supp. 2d at 1178-79, 1182-83.

---

[16] *See also Kenney*, 426 F. Supp. 2d at 1183 ("All that plaintiffs' Amended Complaint and Response ostensibly demonstrates is that [the company] had an audit committee and the four independent outside director defendants were members of this committee during the period where the accounting improprieties occurred.  That is not enough.").

[17] A *Caremark* claim is one of the "most difficult" claims "upon which a plaintiff might hope to win a judgment."  *In re Caremark Int'l Inc. Deriv. Litig.*, 698 A.2d 959, 967 (Del. Ch. 1996).

[18] *See, e.g.*, ¶¶ 76, 82.

[19] *Desimone*, 924 A.2d at 935; *see also Guttman v. Huang*, 823 A.2d 492, 507 (Del. Ch. 2003).

Rather, courts have found that the fact that directors and officers recognized such inadequacies and took action to remedy them creates just the opposite inference. *See id.* at 1183.  Such an inference is appropriate here.  On its own initiative, Ciber management undertook a rigorous, cross-departmental audit of all its fixed-price legacy contracts, and voluntarily decided to suspend guidance based upon its own assessment of the internal controls in its North American business.[20]

### b.   Oversight Allegations Regarding Contracts with the Pennsylvania Turnpike

Plaintiff alleges no plausible connection between Ciber's suspended guidance in 2011 and charges against Ciber executive Dennis Miller related to contracts with the Pennsylvania Turnpike dating back to 2005.[21]  Plaintiff contends that statements made by the Officer Defendants in late 2010 and early 2011 making projections for fiscal 2011 were somehow rendered "false or misleading" by this alleged misconduct.[22]  Plaintiff, however, does not identify any particular statement made by any Individual Defendant during a conference call or in a filing that refers to contracts with the Pennsylvania Turnpike.  Nor does Plaintiff state that an Individual Defendant knew any particular statement to be untrue when made based on his knowledge of those contracts.  Nowhere does Plaintiff claim that the alleged misconduct of this former employee had any impact on Ciber's ability to meet its 2011 guidance, on its decision to suspend

---

[20] *See id.*; ¶ 55.

[21] Plaintiff, again engaging in "group pleading," claims that "Ciber's officers and directors" (as a group) "knew or were reckless in not knowing about [Ciber employee Dennis] Miller's conduct" because a complaint was filed by a Turnpike employee in Pennsylvania state court.  ¶ 74.  But Plaintiff does not allege that Ciber was named as a party in the complaint, that those allegations withstood judicial scrutiny, or that the complaint even referred to "Miller's conduct".

[22] *See, e.g.*, ¶ 9.

guidance, on its 2Q 2011 results, or on the performance of its stock.[23]  These allegations have no bearing on the truth or falsity of the challenged statements, and thus no bearing on any threat of liability for breach of duty related to such statements.

Even if, *arguendo*, the statements *had* been false or misleading because of these new allegations, however, Plaintiff has alleged nothing more as to the Board's involvement than the bare conclusion that the directors (again, as a group) "approved" those statements.[24]  Plaintiff has attributed no direct role in the alleged "pay-to-play" wrongdoing to any Individual Defendant.[25]  These allegations are not particularized, and do not establish the "substantial likelihood" of director liability necessary to excuse demand.[26]  Plaintiff does not establish that any of the directors — let alone five of them — would be unable to impartially consider a demand.

It is unclear whether Plaintiff seeks to allege breach of fiduciary duty against Defendants related to the alleged "pay-to-play" misconduct itself.  *See, e.g.*, ¶ 8.  Regardless, a *Caremark* claim based on a failure of oversight will not stand under Rule 23.1.  *First*, Plaintiff has not

---

[23] Nor does Plaintiff allege that the facts relating to a 2009 audit of a contract with the City of New Orleans rendered any particular statement regarding Ciber's 2011 guidance false or misleading when made.  Neither does Plaintiff allege that this contract played some role in causing Ciber to miss or suspend guidance in 2011, nor that it had any effect on Ciber's financial performance.  *See* ¶ 8.

[24] *See, e.g.*, ¶ 9.

[25] Notably, Plaintiff does not include allegations regarding the Turnpike contracts in the Demand Futility Allegations section of the Amended Complaint.  ¶¶ 94-126.

[26] Referring to a 2009 audit, Plaintiff asserts that "Defendants Peterschmidt, Jacobs, Heitz, Kurtz, Lauk, McGill, Spira, and Stevenson had a duty to ensure that the Company had adequate operational discipline, process and controls in place . . . ."  ¶ 8.  Directors Peterschmidt, Lauk, and Heitz, however, were not even at the Company in 2009 — Mr. Peterschmidt and Mr. Lauk joined in 2010 (¶ 19), and Mr. Heitz joined in 2011 (¶ 28).  *See also* Ex. A at 16-20; ¶¶ 73-74 (alleging that "the officers and directors of CIBER, *including* Defendants Jacobs, Heitz, Kurtz, Lauk, McGill and Spira" knew of alleged conduct, without specifying which officers or directors, or alleging how directors such as Mr. Lauk and Mr. Heitz would have learned of events prior to their tenure) (emphasis added); *Rist v. Stephenson*, No. CIV. A. 05-CV-02326, 2007 WL 2914252, at *7 (D. Colo. Oct. 1, 2007).

established he has standing to bring claims challenging the alleged Turnpike conduct, which dates back to 2005.  ¶¶ 62-68; *see* ¶¶ 1, 17 (alleging only that Plaintiff has held Ciber shares from "December 15, 2010 to the present").[27]  *Second,* a *Caremark* claim cannot be premised on a failure to implement a system of controls where the complaint concedes both the existence of such a system and policies meant to deter employee wrongdoing, as the Amended Complaint does here.  *See, e.g.*, ¶ 72 (acknowledging Ciber's Code of Business Conduct and Ethics prohibiting bribes).[28]  *Third*, Plaintiff does not allege the required "bad faith" of any Individual Defendant.  *See supra* at 11-12.

### 3.   Plaintiff Cannot Establish a Substantial Likelihood of Liability for Decisions Relating to Compensation, Incentive Awards, or Director Benefits

Plaintiff fails to plead facts establishing a reasonable doubt that a majority of the Board is interested or lacks independence as to the allegations relating to compensation, incentive awards, and director benefits.  Nor can Plaintiff establish that any of these decisions were not valid exercises of business judgment.

In order for demand to be excused as to allegations of waste under the second prong of *Aronson*, a plaintiff must plead particularized facts leading to a reasonable inference that a defendant authorized "an exchange that is so one sided that no business person of ordinary, sound judgment could conclude that the corporation . . . received adequate consideration."  *In re Walt Disney Co. Deriv. Litig.*, 731 A.2d 342, 362 (Del. Ch. 1998) (citation omitted), *aff'd in part,*

---

[27] *Desimone*, 924 A.2d at 924-27 (derivative plaintiff has no standing to challenge conduct that occurred prior to the time that plaintiff owned company stock).

[28] *See In re Dow Chem. Co. Deriv. Litig.*, No. CIV. A. 4349, 2010 WL 66769, at *13 n.85 (Del. Ch. Jan. 11, 2010) (where company had code of ethics prohibiting bribes, *Caremark* claim failed, even though plaintiff pleaded sufficient facts establishing that company employees paid illegal bribes).

*rev'd in part on other grounds by Brehm*, 746 A.2d 244.  Where a corporation received any substantial consideration, and the board made a good faith judgment that the transaction was worthwhile, a waste claim will not stand.  *See id.*  Plaintiff provides no facts establishing either an absence of consideration or the failure of the Board to exercise its judgment in good faith.

### a.   Compensation of Mr. Cheesbrough and Mr. Hadzi

Plaintiff makes no specific allegation that the Directors were interested in, or somehow lacked independence regarding, the compensation decisions involving Messrs. Cheesbrough and Hadzi.  Plaintiff does not claim that any directors "sat on both sides" of the transactions, or received any personal benefit from them.

As to the second prong of *Aronson*, Plaintiff does not allege that the terms of the agreements with Mr. Cheesbrough and Mr. Hadzi — which include non-interference, non-competition, and non-solicitation clauses, as well as releases of claims against the company — fail to provide return consideration, such as would rebut the business judgment rule.[29]  Plaintiff lists certain aspects of the severance granted, but alleges no facts to establish that the exchanges were so one-sided as to lack consideration.[30]  Plaintiff alleges in conclusory fashion that Messrs. Cheesbrough and Hadzi should have been terminated for cause, but pleads no facts as to why.[31]

Plaintiff simply ignores the fact that Mr. Hadzi's severance was granted pursuant to an

---

[29] *See* ¶¶ 46-47; Ex. M; Ex. N at 8, 11 (containing legal release and non-disparagement clauses); Ex. O (containing legal release, as well as non-solicitation, non-interference, and non-competition covenants).  Mr. Cheesbrough also committed in his agreement to providing certain assistance with the CFO transition.  *See* Ex. N at 7.

[30] ¶¶ 46-47.

[31] ¶¶ 10, 46-47.

employment agreement, and that Ciber has obligations to Mr. Hadzi under that agreement. Plaintiff makes no allegations whatsoever about the terms of that agreement, and thus cannot show that it was "a transaction so lacking in value to the Company that no reasonable director could have been in favor of it." *Seinfeld v. Slager*, No. CIV. A. 6462, 2012 WL 2501105, at *6 (Del. Ch. June 29, 2012).

Courts have found a range of compensation decisions similar to the ones challenged here to be valid exercises of business judgment. *See id.* (boards may have many reasons to award bonuses for professional services rendered, including incentivizing current and future employees, ensuring smooth transitions, and receiving general releases); *Zucker v. Andreesen*, No. CIV. A. 6014, 2012 WL 2366448, at *8 (Del. Ch. June 21, 2012) (confidentiality, non-disparagement, transition support, and release commitments constitute valid consideration for severance). There is no reasonable doubt these decisions were also valid exercises of business judgment.

### b.    Compensation of Mr. Peterschmidt

Plaintiff does not allege that a majority of the Board stood on both sides of decisions to amend Mr. Peterschmidt's Non-Qualified Option Agreement or to award him 400,000 additional restricted stock units (RSUs). ¶¶ 11, 52, 53. Thus, Plaintiff cannot establish interestedness. Plaintiff pleads no specific facts to establish a reasonable doubt as to whether the RSU grant or the agreement amendment were exchanges so one sided that no business person could conclude that Ciber had received adequate consideration. Nor does Plaintiff allege that the amendment or grant were made in violation of Mr. Peterschmidt's employment agreement, or in any other improper fashion. Plaintiff thus cannot establish a reasonable doubt that the

amendment and grant of RSUs were a valid exercise of business judgment.

c.      **Letter Agreement with Mr. Stevenson**

Plaintiff does not allege that a majority of the Board had any interest in the Letter Agreement with Mr. Stevenson, or that a majority of directors stood on both sides of the transaction or were otherwise interested.  ¶ 51.  As to the business judgment rule, Plaintiff makes no claim that Mr. Stevenson failed to provide return promises of value in consideration for the benefits in question.  In the absence of such allegations, courts will not second-guess the business judgment of the directors.[32]

Plaintiff does not — because he cannot — allege that the Letter Agreement lacks consideration.  The agreement rewards Mr. Stevenson for his "years of distinguished service," and for his contributions as a Founder of the Company.[33]  Mr. Stevenson agrees to maintain communication with the other directors and the CEO, and to continue to be engaged with corporate affairs.[34]  Mr. Stevenson agrees to keep company information confidential, and to return certain information when he leaves the board.[35]  He also agrees not to interfere with the customer relationships of the Company, and not to work for, invest in, or serve as a director of, certain competing businesses.[36]  Plaintiff does not, and could not, contend that such return

---

[32] *See Walt Disney,* 731 A.2d at 350, 362-63 (refusing to excuse demand where plaintiffs failed to plead particularized facts showing board's decision to grant departing executive severance package allegedly totaling $140 million was so one-sided that no business person of ordinary judgment could conclude that company had received adequate consideration).

[33] Ex. P at 1.

[34] *Id.*

[35] *Id.* at 6-7.

[36] *Id.* at 7-8.

commitments are not valuable to the Company.[37]

### d.   Amendment of 2004 Incentive Plan

Plaintiff does not assert that the Directors acted outside the provisions of the 2004

Incentive Plan (the "Plan") in making amendments to the Plan, or that the Directors made

improper grants to themselves under the Plan.  *See* ¶¶ 59-60.  Plaintiff does not allege that the

Ciber shareholders were improperly denied a vote on the challenged amendments, or that they

failed to approve the amendments in accordance with company policies and procedures.[38]

When directors administer a shareholder-approved plan in a manner consistent with the

provisions of that plan, and the plan provides limitations on the awards that can be made, the

business judgment rule will apply.[39]

Plaintiff's allegation that Defendants are misleading the public about the Plan's "actual

purpose" is entirely conclusory, and unsupported by any allegations of fact.[40]  Plaintiff pleads the

bald assertion that the Plan provides no "meaningful" limits on grants that can be made.  But

Plaintiff provides no factual allegations sufficient to give notice of such a claim even under Rule 8,

let alone the "particularized" facts required under Rule 23.1.[41]  Plaintiff himself admits that "[t]he

---

[37] *See Zucker*, 2012 WL 2366448, at *3-4, 9-10 (demand not excused where departing CEO received more than $40 million in cash and equity-based compensation for value he had contributed to company, where CEO agreed to certain confidentiality, non-disparagement, cooperation, and general release clauses in return).

[38] *See* Ex. Q (stockholder vote approving Plan amendments); Ex. R (2013 stockholder vote approving Plan amendments).

[39] *See In re 3Com Corp. S'holder Litig.*, No. C.A. 16721, 1999 WL 1009210, at *3 (Del. Ch. Oct. 25, 1999); *Seinfeld*, 2012 WL 2501105, at *11-12.

[40] ¶¶ 49-50.  Plaintiff does not deny that the Plan permits Ciber to "attract, retain, and incentivize executives and other employees and Directors."  Ex. A at 9.

[41] *See* ¶¶ 50, 60.

Incentive Plan provides for awards of *up to 1 million shares to each individual per year*, with awards to be determined by the Board and the Compensation Committee." ¶ 48 (emphasis added). Plaintiff alleges nothing to establish that such a limit is not "meaningful," or that such a limit somehow belies the Plan's stated purpose.[42] Nor does Plaintiff contest that the Plan contains detailed rules governing the grant process itself.[43] Plaintiff has not established that the Directors would be interested as to a claim regarding the 2004 Incentive Plan, nor has Plaintiff established reasonable doubt as to the valid exercise of business judgment regarding the amendment of that Plan.

### C.   Plaintiff Fails to Allege Facts Creating a Reasonable Doubt as to the Independence of at Least Five Directors

Plaintiff has not pleaded particularized facts sufficient to show that any Director Defendant has acted in bad faith and therefore faces a substantial likelihood of liability. This Court therefore need not reach the question of whether Plaintiff has pleaded adequately a lack of independence on the part of the three directors (Peterschmidt, Stevenson, and Jacobs) whose independence Plaintiff challenges.[44] Plaintiff nevertheless falls far short of showing that any of the directors lacks independence.

---

[42] *See, e.g.*, Ex. S at 64; Ex. A at 9-10 (comparing Ciber's "burn rate" to ISS burn rate threshold for the industry).

[43] *See* Ex. S at 22 (Compensation Committee is responsible for recommending grants to non-employee directors); *Id.* at 26 (Compensation Committee employed compensation consultant to perform competitive market analysis of compensation practices in Ciber's "Peer Group," and Committee established compensation practices program for non-employee directors in line with market).

[44] ¶¶ 101, 104, 111. In order to raise a reasonable doubt of director independence, a plaintiff must allege that "directors were dominated or otherwise controlled by an individual or entity *interested* in the transaction." *Grobow v. Perot*, 539 A.2d 180, 189 (Del. 1988) (emphasis added), *overruled on other grounds by Brehm*, 746 A.2d 244.

Plaintiff does not even attempt to show that any directors are "beholden" to any other allegedly interested director, or "so under their influence that their discretion would be sterilized." *Rales*, 634 A.2d at 936.  Instead, Plaintiff conflates interestedness with lack of independence. Thus, Plaintiff attempts to claim that "Defendant Peterschmidt cannot render an independent decision because he is and was a high-ranking officer of Ciber during the time period when the wrongdoing occurred."[45]  Such an allegation does nothing to establish lack of independence.[46]

## II.    PLAINTIFF FAILS TO STATE A CLAIM

Even if, *arguendo*, the Court were to find that Plaintiff was excused from making demand, the Amended Complaint should still be dismissed because it fails to state claims against the Individual Defendants.[47]  The Court found previously that Plaintiff had failed to state a claim.[48]  As discussed *supra* at 8-11, Plaintiff has not remedied the defects identified in the Court's Order. The Amended Complaint should therefore be dismissed.

A court should grant dismissal under Fed. R. Civ. P. 12(b)(6) where a plaintiff fails to allege enough facts to "state a claim to relief that is plausible on its face." *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007).  The Amended Complaint continues to attribute knowledge of events collectively, and thus continues to fall short of the standard required by both Rule 8 and Rule 12.  *See id.*  Plaintiff further fails to establish facts meeting the elements of each count.

---

[45] ¶ 101.

[46] Plaintiff's allegations regarding the lack of independence of Mr. Stevenson also fail.  ¶¶ 104-06. "Demand futility cannot be pled merely by asserting that the directors acted or would act to preserve their positions."  *In re Computer Scis. Corp. Deriv. Litig.*, No. CV-06-05288, 2007 WL 1321715, at *12 (C.D. Cal. Mar. 26, 2007).

[47] *See* Fed. R. Civ. P. 12(b)(6).

[48] See Order at 5-6.

### A.      Plaintiff Fails to State a Breach of Fiduciary Duty Claim Against the Individual Defendants

In Count I, Plaintiff alleges breaches of the duties of "good faith, fair dealing, loyalty, due care, reasonable inquiry, oversight and supervision."  ¶ 129.  Ciber, however, has adopted an exculpatory clause that eliminates claims against directors for monetary damages for non-intentional conduct that was in good faith and not designed to derive an improper personal benefit.[49]  Thus, Plaintiff must allege particularized facts demonstrating that the Individual Defendants breached their duty of loyalty, acted in bad faith, or engaged in intentional misconduct.[50]  As explained below, Plaintiff fails to plead any facts demonstrating that any of the Individual Defendants breached their duty of loyalty or engaged in intentional misconduct.

### 1.      Plaintiff Fails To State a Claim for Breach of Loyalty

The Amended Complaint fails to plead a breach of the duty of loyalty.  To plead a breach of fiduciary duty of loyalty claim, a plaintiff must allege facts demonstrating that defendants placed their own interests ahead of the interests of the corporation and its shareholders or failed to act in good faith.[51]

Here, the Amended Complaint pleads no facts that show that each of the Individual Defendants had the intent necessary to establish a breach of the duty of loyalty.  The Amended Complaint fails to allege particularized facts that suggest the Individual Defendants placed their

---

[49] *See* Ex. T, Art. 9; 8 Del. Ch. § 102(b)(7).

[50] *See Wood*, 953 A.2d at 141.

[51] *See Stone ex rel. AmSouth Bancorp v. Ritter*, 911 A.2d 362, 369-70 (Del. 2006) (dismissing derivative suit and noting examples of conduct that constitute a breach of the duty of loyalty include: "where the fiduciary intentionally acts with a purpose other than that of advancing the best interests of the corporation, where the fiduciary acts with the intent to violate applicable positive law, or where the fiduciary intentionally fails to act in the face of a known duty to act, demonstrating a conscious disregard for his duties").

own interests ahead of the interests of Ciber and its shareholders.  Plaintiff also fails to allege any

facts demonstrating that any of the Individual Defendants had a personal financial conflict,

knowingly failed to undertake his responsibilities, knowingly made false statements, or disguised

any information about the fixed-price contracts or guidance for 2011.

Plaintiff's continued pleading defects are not surprising given that the facts show that

Ciber sought to identify any problems by persistently evaluating its fixed-price contracts and

internal controls throughout 2011.[52]  The Company promptly disclosed the results of the

evaluations to investors once they were known.[53]  The Company's warnings to investors —

before it suspended guidance — about weaknesses in its internal controls and issues with the

fixed-price contracts refute any suggestion of deliberate concealment.[54]  Plaintiff fails to plead *any*

facts — let alone particularized facts — demonstrating that the Individual Defendants knowingly

disregarded alleged inaccuracies in the statements at the time they were made, much less that

they sought to mislead investors.

### B.      Plaintiff Fails to State a Claim for Unjust Enrichment

Plaintiff's claim for unjust enrichment fails as a matter of law and logic.  Plaintiff makes this

count expressly dependent upon the existence of "breach[es]" of "fiduciary duties" by the

Individual Defendants, and, as demonstrated *supra*, Plaintiff has not pleaded facts establishing

---

[52] *See supra* at 5.

[53] *See id.* at 6.

[54] *See, e.g.*, Ex. B at 21.  As demonstrated *supra* in I.B.2., Plaintiff's allegations fail to state a *Caremark* claim.  Thus, to the extent the Amended Complaint alleges breach of fiduciary duty claims for a failure of oversight, reasonable inquiry, or supervision, those claims fail as a matter of law.

that any such breaches exist.[55]  Count I should be dismissed and Count II must, by extension,

therefore also be dismissed.

"The elements of unjust enrichment are: (1) an enrichment, (2) an impoverishment, (3) a

relation between the enrichment and impoverishment, (4) the absence of justification, and (5) the

absence of a remedy provided by law."  *Nemec v. Shrader*, 991 A.2d 1120, 1130 (Del. 2010).  To

the extent that the claim is based upon compensation received by the executive officers and

directors for services provided to the Company, Plaintiff does not claim those services were not

provided, such that compensation was unjustified.[56]  Plaintiff makes only conclusory statements,

but alleges no facts to establish his claim.[57]  Accordingly, this claim should be dismissed.

### C.      Plaintiff Fails to State a Claim for Corporate Waste

Plaintiff also fails to make out a claim for waste.  The pleading standard for a claim of

waste is "extreme" and "very rarely satisfied."  *3Com*, 1999 WL 1009210, at *4.  Plaintiff must

establish a complete failure of consideration, and his claims cannot meet this high bar.  *See id.*

### 1.      Termination Agreements of Messrs. Cheesbrough and Hadzi

Plaintiff does not allege that the promises made by Messrs. Cheesbrough and Hadzi as

part of their termination agreements had no value, nor does Plaintiff make any comparison of the

---

[55] *See supra* at 6-14; ¶ 135.

[56] *See Sherman v. Ryan*, 911 N.E.2d 378, 399 (Ill. App. Ct. 2009) (applying Delaware law) (plaintiffs failed to state claim for unjust enrichment where they alleged that Aon directors were unjustly "paid substantial salaries and bonuses" while the company engaged in "wrongful" conduct leading to settlement payments of more than $228 million, but failed to allege that "[the directors] performed *no* work in exchange for their compensation" (emphasis added)).

[57] *See In re Accuray, Inc. S'holder Deriv. Litig.*, 757 F. Supp. 2d 919, 935 (N.D. Cal. 2010) (dismissing as conclusory claim of unjust enrichment that alleged that directors were "unjustly enriched as a result of the compensation and director remuneration they received while breaching fiduciary duties owed to [the company]").

value of the consideration exchanged.[58]  As such, plaintiff does not show a failure of consideration.  The allegations thus fail to state a claim.

### 2.    Peterschmidt Compensation and Stock Option Plan; Stevenson Letter Agreement

Under Delaware law, corporations may create and issue options to purchase their capital stock.  In the absence of fraud, the directors' judgment regarding the adequacy of consideration for such options is considered "conclusive."[59]  In *3Com*, the plaintiff accused the directors of corporate waste in making grants of options to directors of at least $650,000.[60]  The plaintiff claimed that the company had received inadequate benefit in return.  The court found that, in order to state a claim, plaintiff had to plead that *no* benefit had been received.[61]  Plaintiff here does not even attempt to claim that no benefit is being received.  Nor could he.  Plaintiff alleges only that the Board granted 400,000 restricted stock units to Mr. Peterschmidt.  Plaintiff then simply concludes that an award of "self-interested" stock options constitutes corporate waste.[62]  Such an allegation does not establish a failure of consideration.

Plaintiff similarly provides no allegations regarding either the value of the benefits provided to Mr. Stevenson or the consideration Mr. Stevenson provided to the Company in return.  Plaintiff simply lists benefits that Mr. Stevenson receives under the terms of his Letter Agreement with Ciber, and concludes that the benefits, by their very nature, amount to waste.[63]

---

[58] *See supra* at I.B.3.a.

[59] 8 Del. C. § 157(a),(b).

[60] *See* 1999 WL 1009210, at *4.

[61] *See id.*

[62] ¶¶ 53, 140.

[63] ¶¶ 51, 140.

Plaintiff has not shown that the Company has not received anything of value in exchange, and thus fails to state a claim.

### 3.   Amendments to the 2004 Incentive Plan

As noted *supra* at 18, Plaintiff fails to make adequate claims with respect to the 2004 Incentive Plan.  Plaintiff makes no assertions that amendments to the Plan were, or will be, improperly made.  Plaintiff provides no factual basis for the statement that the Plan lacks limits and guidelines, *see supra* at 18-19, and provides no basis for the charge that the "actual purpose" of the plan is for the Individual Defendants to distribute assets to themselves.[64]  Such unsubstantiated assertions fail to state a claim.

### 4.   Legal Costs and Liabilities

Plaintiff's claim for waste due to legal liability or costs also cannot survive a motion to dismiss.[65]  Plaintiff's claim is too vague to satisfy Rule 8, and claims related to "potential" costs and liabilities are not ripe for decision.  While Plaintiff alleges that the Company has spent "significant sums of money" and will face "substantial costs" related to the securities class action, any claim for waste on such a basis is speculative.[66]  To the extent Plaintiff intends to refer to legal expenditures that could arise from this derivative claim, such circular reasoning has been dismissed in similar contexts.[67]

---

[64] ¶ 50.

[65] ¶ 140.

[66] *See* ¶¶ 84, 90, 92(a); *In re United Tel., Inc. Sec. Litig.*, No. 90-2251, 1993 WL 100202, at *3 (D. Kan. Mar. 4, 1993) (courts will not decide cases based on "contingent future events").

[67] *See, e.g., Lemond v. Manzulli*, No. 05 CIV. 2222, 2009 WL 1269840, at *8 (E.D.N.Y. Feb. 9, 2009); *Garcia v. Carrion*, No. CIV. 09-1507, 2010 WL 3662593, at *9 (D.P.R. Aug. 11, 2010).

## CONCLUSION

For the foregoing reasons, Defendants respectfully request that the Court GRANT their motion to dismiss the Amended Complaint with prejudice.

Dated:  May 20, 2013

Respectfully submitted,

*/s/*    Elizabeth C. Peterson

WILSON SONSINI GOODRICH & ROSATI PC
Boris Feldman
Elizabeth C. Peterson
650 Page Mill Road
Palo Alto, CA 94304-1050
Phone:  (650) 493-9300
Fax:  (650) 493-6811
Email: boris.feldman@wsgr.com
Email: epeterson@wsgr.com

Holly Stein Sollod
HOLLAND & HART LLP
555 17th Street, Suite 3200
Denver, CO 80202
Phone: (303) 295-8085
Fax: (303) 975-5395
Email: hsteinsollod@hollandhart.com

*Attorneys for Defendants*

## CERTIFICATE OF SERVICE

I certify that on May 20, 2013, I electronically filed the foregoing with the Clerk of the Court using the CM/ECF system.  Notice of this filing will be sent to all parties by operation of the Court's electronic filing system.

evan@lipsteinlaw.com
frankj@johnsonandweaver.com

/s/ Elizabeth C. Peterson