IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLORADO

Civil Action No. 12-cv-00320-REB-CBS

JOHN SENI, Derivatively on Behalf of CIBER, INC.,
        Plaintiff,
v.

DAVID C. PETERSCHMIDT,
CLAUDE J. PUMILIA,
PETER H. CHESSBROUGH,
BOBBY G. STEVENSON,
JEAN-FRANCIOS HEITZ,
PAUL JACOBS,
STEPHEN S. KURTZ,
KURT J. LAUK,
ARCHIBALD J. MCGILL, and
JAMES C. SPIRA,
        Defendants,[1]
and

CIBER, INC.,
        Nominal Defendant.

_____

RECOMMENDATION OF UNITED STATES MAGISTRATE JUDGE

_____

Magistrate Judge Craig B. Shaffer

        This civil action comes before the court on: (1) Defendants' Motion to Dismiss the Amended

Complaint, and (2) Defendants' Motion to Stay Discovery and Vacate Related Deadlines.

Pursuant to the Order Referring Motions dated July 10, 2013 (Doc. # 90), these matters were

referred to the Magistrate Judge.  The court has reviewed the Motions, the related briefing and

hearings, the pleading, the entire case file, and the applicable law and is sufficiently advised in the

premises.

_____

[1]      Mr. Seni has indicated that he "no longer intends to actively pursue claims against"
Defendant Heitz.  (*See* Plaintiff's Opposition to Defendants' Motion to Dismiss the Amended
Complaint (Doc. # 80) at 11 of 37 n. 2).

I.      Statement of the Case

This is a shareholder derivative action brought against the Directors  and certain current and former officers of CIBER, Inc., arising "out of the Individual Defendants' decision to issue materially false and misleading statements concerning CIBER's financial results and business prospects from December 15, 2010, to the present." (*See* Doc. # 65 at ¶ 1).  District Judge Blackburn granted Defendants' prior Motion to Dismiss, finding that Mr. Seni failed "to make sufficiently specific allegations addressing each defendant individually" and that his "group pleading" did "not provide the specificity required" by Rules 12 and 8, as interpreted in *Ashcroft v. Iqbal*, 556 U.S. 662 (2009) and *Bell Atl. Corp. v. Twombly*, 550 U.S. 544 (2007). (*See* Doc. # 64 at 5 of 10).  Judge Blackburn permitted Mr. Seni to file his Amended Complaint.  (*See id.* at 9 of 10).

In the Amended Complaint  ("AC") (Doc. # 65), Mr. Seni alleges that "Defendants Peterschmidt, Cheesbrough, and Pumilia, individually and on behalf of the Company, made false and misleading statements in public filings, press releases, and conference calls that touted the Company's positive financial results, significant growth, and presented aggressive forward guidance." (*See* Doc. # 65 at ¶ 3).  He further alleges that the "remaining Individual Defendants, including Defendants Jacobs, Kurtz, Lauk, McGill, Spira, and Stevenson, even if they did not personally make the false statements, breached their fiduciary duties to the Company by not correcting known false statements made on behalf of CIBER as was necessary to prevent the existing disclosures from being misleading." (*See id.*).  Mr. Seni asserts three claims against the Individual Defendants for: (1) breach of fiduciary, (2) unjust enrichment, and (3) corporate waste. (*See* Doc. # 65 at ¶¶ 127-142).  The court has jurisdiction over this case based on diversity of citizenship under Title 28 U.S.C. § 1332.

II.     Defendants' Motion to Dismiss the Amended Complaint

A.      Standard of Review

Defendants and Nominal Defendant, Ciber, Inc., move to dismiss the AC pursuant to Federal Rules of Civil Procedure 8, 12(b)(6), and 23.1.  Pursuant to Rule 8, "[a] pleading that states a claim for relief must contain: . . . a short and plain statement of the claim showing that the pleader is entitled to relief," Rule 8(a)(2), and "[e]ach allegation must be simple, concise, and direct," Rule 8(d)(1).

Rule 23.1 "establishes the procedural requirements for bringing a shareholder derivative suit in federal court." *Kenney v. Koenig*, 426 F. Supp. 2d 1175, 1180 (D. Colo. 2006).  "[T]he management of corporations is entrusted to their boards of directors," and "shareholders typically are foreclosed from suing on behalf of a corporation on a claim that the corporation itself has not brought." *Loveman v. Lauder*, 484 F. Supp. 2d 259, 264 (S.D.N.Y. 2007).  An exception is that a shareholder may sue derivatively on behalf of a company.  "The derivative form of action permits an individual shareholder to bring suit to enforce a corporate cause of action against officers, directors, and third parties." *Kamen v. Kemper Financial Services, Inc.*, 500 U.S. 90, 96 (1991) (internal quotation marks and citation omitted).  "Devised as a suit in equity, the purpose of the derivative action was to place in the hands of the individual shareholder a means to protect the interests of the corporation from the misfeasance and malfeasance of 'faithless directors and managers.'" *Id.* (internal quotation marks and citation omitted).  "To prevent abuse of this remedy, however, equity courts established as a precondition for the suit that the shareholder demonstrate that the corporation itself had refused to proceed after suitable demand, unless excused by extraordinary conditions." *Kamen*, 500 U.S. at 96 (internal quotation marks and citation omitted). "The purpose of the demand requirement is to affor[d] the directors an opportunity to exercise their reasonable business judgment and waive a legal right vested in the corporation in the belief that its best interests will be promoted by not insisting on such right." *Id.* (internal quotation marks and

citation omitted).  "Ordinarily, it is only when demand is excused that the shareholder enjoys the right to initiate suit on behalf of his corporation in disregard of the directors' wishes."  *Kamen*, 500 U.S. at 96 (internal quotation marks and citation omitted).  A shareholder may sue derivatively on behalf of a company if the shareholder sufficiently alleges that a demand would be a futile gesture and is therefore excused.  *Loveman*, 484 F. Supp. 2d at 265 (citation omitted).

A complaint must "allege with particularity any effort by the plaintiff to obtain the desired action from the directors . . . and, if necessary, from the shareholders or members" and "the reasons for not obtaining the action or not making the effort."  Fed. R. Civ. P. 23.1  "Rule 23.1 speaks only to the adequacy of the shareholder representative's pleadings."  *Kamen*, 500 U.S. at 96.  The Rule "demand[s] atypically rigorous pleading by plaintiffs."  *In re SAIC Inc. Derivative Litigation*, No. 12 Civ. 2437(JPO), 2013 WL 2466796, at * 15 (S.D.N.Y. June 10, 2013).  "To establish that demand is excused under Rule 23.1, the pleadings must comply with stringent requirements of factual particularity and set forth particularized factual statements that are essential to the claim."  *In re Citigroup Inc. Shareholder Derivative Litigation*, 964 A.2d 106, 120 (Del. Ch. 2009) (internal quotation marks and citation omitted).

"Motions to dismiss for failure to allege demand futility are considered under Fed. R. Civ. P. 12(b)(6)."  *In re Keithley Instruments, Inc. Derivative Litigation*, 599 F. Supp. 2d 875, 888 (N.D. Ohio 2008) (citation omitted).  "The difference between the 12(b)(6) and 23.1 standards is in the level of detail demanded of the plaintiff's allegations."  *Desimone v. Barrows*, 924 A. 2d 908, 928 (Del. Ch. 2007).  Rule 12(b)(6) permits dismissal of a complaint for "failure to state a claim upon which relief can be granted."  Judge Blackburn summarized the standard of Rule 12(b)(6):

> In considering a motion under Fed. R. Civ. P. 12(b)(6), I must determine whether  the allegations in the complaint are sufficient to state a claim within the meaning of Fed. R. Civ. P. 8(a). I must accept all well-pleaded allegations of the complaint as true.  However, conclusory allegations or legal conclusions masquerading as factual conclusions will not suffice to prevent a motion to dismiss.  I review the challenged portion of a complaint to determine whether it contains enough facts to state a claim to relief that is plausible on its face.

Thus, the mere metaphysical possibility that some plaintiff could prove some set of facts in support of the pleaded claims is insufficient; the complaint must give the court reason to believe that this plaintiff has a reasonable likelihood of mustering factual support for these claims. Nevertheless, the standard remains a liberal one, and a well-pleaded complaint may proceed even if it strikes a savvy judge that actual proof of those facts is improbable, and that a recovery is very remote and unlikely.

(*See* Doc. # 64 (internal quotation marks, citations, and footnotes omitted)).

B.    Analysis

1.    Demand Requirement under Delaware Law

Rule 23.1 does not specify what constitutes a valid excuse for failure to make a demand on the directors. *Kenney*, 426 F. Supp. 2d at 1180. The demand requirements for a derivative suit are determined by the law of the state of incorporation. *Id.* The parties agree that the substantive law of Delaware governs the claims. (*See* "Order Granting Motion to Dismiss" (Doc. # 64)) (internal quotation marks, citations, and footnotes omitted). *See also Wilshire Oil Co. of Tex. v. Riffe*, 409 F.2d 1277, 1283 n. 16 (10th Cir.1969) (applying Delaware law as to the liability of corporate officers and directors where Delaware is the state of incorporation). District Judge Blackburn reserved for determination whether the allegations in the AC meet the demand requirement established in *Rales v. Blasband*, 634 A.2d 927, 932 (Del. 1993). (*See* Doc. # 64 at 7-10 of 10).

Mr. Seni challenges no specific board action and the parties agree that the *Rales* test applies to his claims. "[T]he gravamen of Plaintiff's AC concerns the knowing issuance of false and misleading statements." (*See* Doc. # 80 at 6 of 37). Under Delaware law, where, as here, no specific board action is challenged, the right of a stockholder to prosecute a derivative action is limited to "situations where the stockholder has demanded that the directors pursue the corporate claim and they have wrongfully refused to do so or where demand is excused because the directors are incapable of making an impartial decision regarding such litigation." (*See* Doc. # 64

5

at 7of 10) (citing *Rales*, 634 A.2d at 932 (internal quotation marks omitted)).  "This threshold requirement prevents strike suits and ensures that a stockholder exhausts his intracorporate remedies."  (*See* Doc. # 64 (citation omitted)).  Mr. Seni alleges that he "did not make a pre-suit demand on the Board to pursue this action, because such a demand would have been a futile and wasteful act."  (*See* Doc. # 65 at ¶ 97).  Where the board did not make a business decision that is being challenged in the derivative suit, the court examines whether the board can impartially consider the merits of the demand without being influenced by improper considerations.  *Rales*, 634 A.2d at 934.  "[T]he board must be able to act free of personal financial interest and improper extraneous influences."  *Id.*, at 935.

"The demand requirement can be excused if the plaintiff pleads particular facts creating a reasonable doubt that the majority of the board would be disinterested or independent in making a decision on a demand."  (*See* Doc. # 64 at 8 of 10).  *See also Aronson v. Lewis*, 473 A.2d 805, 814 (Del. 1984) (demand is excused only if the plaintiff pleads particularized facts creating a reasonable doubt that: (1) a majority of directors is disinterested and independent; or (2) the transaction was the product of a valid exercise of business judgment), *overruled on other grounds by Brehm v. Eisner*, 746 A.2d 244 (Del. 2000).  A director is considered to be interested if he will be "materially affected, either to his benefit or detriment, by a decision of the board, in a manner not shared by the corporation and the stockholders."  *Seminaris v. Landa*, 662 A.2d 1350, 1354 (Del. Ch. 1995).  *See also Aronson*, 473 A.2d at 814 ("directorial interest also exists where a corporate decision will have a materially detrimental impact on a director, but not on the corporation and the stockholders.").  A director is considered to be independent if his decision is based on "the corporate merits of the subject before the board rather than extraneous considerations or influences."  *Aronson*, 473 A.2d at 816.  "If the derivative plaintiff satisfies this burden, then demand will be excused as futile."  *Rales*, 634 A.2d at 934.  Defendants argue that

Mr. Seni fails to adequately plead that demand was excused.  Mr. Seni argues that his allegations create a "reason to doubt" that a majority of Ciber's Directors  are disinterested and independent.


2.      Interest

Mr. Seni argues that seven of nine Directors  were not disinterested due to the substantial likelihood of personal liability for breach of fiduciary duties.[2]  "[W]here a director is charged with deciding whether to bring a derivative suit naming himself or herself as a defendant the director is potentially interested because he could face personal liability."  *Kenney,* 426 F. Supp. 2d at 1181. However, "the mere threat of personal liability in the derivative action does not render a director interested."  *Seminaris*, 662 A.2d at 1354.

On December 15, 2010, Ciber announced that it would conduct a companywide restructuring or "transformation" of its organizational and management structure, beginning in fiscal year 2011.  (*See* Doc. # 65 at ¶ 32).  Ciber also announced guidance for fiscal year 2011 and for long-term growth.  (*See id.*).  Ciber also specifically reviewed problems with its operational organization.  (See Doc. # 65 at ¶ 38).  On August 3, 2011, Ciber reported its results for the second quarter of 2011, and suspended guidance for 2011.  (*See* Doc. # 65 at ¶ 54-55).  Ciber announced that its overall performance for 2011 had been adversely affected by issues in its North American business and on its balance sheet, and stated: "[s]pecifically, as a result of a more disciplined approach to managing Ciber, we identified five fixed-price contracts signed in 2009 or

---

[2]      Michael Boustridge joined the Board on March 22, 2013, bringing the number of directors who would consider a demand to nine.  *See Braddock v. Zimmerman*, 906 A.2d 776, 786 (Del. 2006) (Where a plaintiff's complaint has been dismissed and the plaintiff is given leave to file an amended complaint . . . the plaintiff must make a demand on the board of directors "in place at the time when the amended complaint is filed" or demonstrate that demand is legally excused as to that board.");  "[F]utility is gauged by the circumstances existing at the commencement of a derivative suit and such reasonable doubt must be raised as to a majority of the board of directors sitting at the time the complaint is filed."  *In re SAIC Inc. Derivative Litigation*, 2013 WL 2466796, at * 8.  (internal quotation marks and citation omitted).  Mr. Boustridge is not named as a defendant in this action.

earlier in the United States that no longer carry the same level of profitability and thus diminished earnings in the quarter." (*See* Doc. # 65 at ¶ 55). Mr. Seni alleges that the statements made by Defendants Peterschmidt, Cheesbrough, and Pumilia and approved by Defendants Jacobs, Kurtz, Lauk, McGill, Spira, and Stevenson regarding the long term business outlook and 2011 guidance were materially false and misleading. (*See* AC at ¶ 44).

a.    2011 Guidance

In the AC, Mr. Seni alleges that Defendants "approv[ed]" the statements regarding the 2011 guidance, failed to "correct" the statements, "signed" SEC filings containing the statements, "endorsed" the statements, and "reviewed" and "authorized" the statements. (*See* Doc. # 65 at ¶¶ 3, 5, 6, 9, 13, 31, 39, 43, 44, 84, 103, 110, 111, 113, 114, 116, 119, 121, 130 ). Mr. Seni argues that demand on the Board was futile based on the Directors' mere awareness of Defendant Peterschmidt's interpretation of Ciber's financial data. (*See* Doc. # 107 at 22-33). These allegations do not excuse demand.

Mr. Seni continues to plead knowledge of events collectively. (*See, e.g.,* Doc. # 65 at ¶¶ 3, 99-106, 110-122, 130, 140). District Judge Blackburn found such allegations inadequate. (*See* Doc. # 64 at 5-6 of 10). Mr. Seni's allegations are conclusory and do not set forth sufficiently particularized facts that Defendants knew on December 15, 2010 that false statements or misrepresentations were made. Mr. Seni argues that knowledge of the alleged false statements may be imputed to each Defendant. *But see Wood v. Baum*, 953 A.2d 136, 142 (Del. 2008) ("board approval of a transaction, even one that later proves to be improper, without more, is an insufficient basis to infer culpable knowledge or bad faith on the part of individual directors"); *Desimone*, 924 A.2d at 943 (rejecting "contention that knowledge on the part of any one board member can be imputed to other board members as a result of their shared board or committee service."). He does not specifically allege how each Director came to know of the issues regarding

8

Ciber's financial performance, or what actions he took. Mr. Seni's allegations about 2011 guidance do not provide the particularized facts to establish that a majority of the Board could not impartially consider a demand under Fed. R. Civ. P. 23.1. *See Wood*, 953 A.2d at 142 (Under Delaware law, "[t]he Board's execution of . . . financial reports, without more, is insufficient to create an inference that the Directors had actual or constructive notice of any illegality."); *Aronson*, 473 A.2d at 817 ("In Delaware mere directorial approval of a transaction, absent particularized facts supporting a breach of fiduciary duty claim, or otherwise establishing the lack of independence or disinterestedness of a majority of directors, is insufficient to excuse demand."); *Decker v. Clausen*, Nos. CIV. A. 10,684, 10,685, 1989 WL 133617, at *2 (Del. Ch. Nov. 6, 1989) (conclusory allegations that "directors participated in and/or approved the alleged wrongs . . . have been rejected consistently by our courts").

b.    Membership on Audit Committee

Mr. Seni also alleges a likelihood of liability for five Directors based on their membership on the Audit Committee. (*See* Doc. # 65 at ¶¶ 77, 112, 114, 117, 122). The AC contains allegations that Ciber had an Audit Committee and the Director Defendants were members of this committee during the period of time relevant to the claims. The AC quotes the Charter provisions regarding the Audit "Committee's duties, responsibilities and authority.". (See Doc. # 65 at ¶ 77). A director's mere membership on an audit committee during the relevant period does not suffice to create a substantial likelihood of liability. *See Kenney*, 426 F. Supp. 2d at 1183 9citation omitted). Lacking from the AC are any specific failures of the Director Defendants or the Audit Committee. *See Rattner v. Bidzos*, No. Civ. A. 19700, 2003 WL 22284323, at *12 (Del.Ch., Sept. 30, 2003) (noting that, "conspicuously absent from any of the Amended Complaint's allegations are particularized facts regarding . . . the actions and practices of [the corporation's] audit committee"). Mr. Seni's allegations amount to little more than a job description of the Audit Committee. (*See*

Doc. # 107 at 30, 36of 61).  He alleges no specific facts as to "how often and how long [the Audit Committee] met, who advised the committee," what the Committee discussed or approved, which specific oversight duties the Directors neglected, or what specific action the Directors failed to take.  See *Rattner*, 2003 WL 22284323, at *12 (citation omitted).  *See Andropolis v. Snyder*, Nos. 05-cv-01563-EWN-BNB, 05-cv-01903-EWN-BNB, 05-cv-01707-EWN-BNB, 2006 WL 2226189, at *14 (D. Colo. Aug. 3, 2006) ("simply because the . . . complaint lists a body of rules that may have been violated and the director defendants membership during that time, that is not sufficient to create a substantial likelihood of liability").  *See also Kenney*, 426 F. Supp. 2d at 1183 ("All that plaintiffs' Amended Complaint and Response ostensibly demonstrates is that [the company] had an audit committee and the four independent outside director defendants were members of this committee during the period where the accounting improprieties occurred. That is not enough.").  These allegations do not plausibly state a substantial likelihood of liability.


c.    Oversight

Mr. Seni alleges that the Defendants breached their fiduciary duties by failing to exercise proper oversight over the issuance of Ciber's financial and other public statements related to internal controls and 2011 guidance.  (*See, e.g.,* Doc. # 65 at ¶¶ 76, 82).  Mr. Seni alleges that the "Individual Defendants each breached their duty of loyalty and good faith by allowing Defendants to cause, or by themselves causing, the Company to make false and/or misleading statements, or by failing to take any actions to correct the false and/or misleading statements." (*See* Doc. # 65 at ¶ 84).  A claim predicated upon the Defendants' failure to act or failure to oversee is governed by the standard set forth in *In re Caremark Int'l, Inc. Deriv. Litig.*, 698 A.2d 959 (Del.Ch.1996).  The *Caremark* court described a director's duty to oversee as follows:

> [A] director's obligation includes a duty to attempt in good faith to assure that a corporate information and reporting system, which the board concludes is adequate, exists, and that failure to do so under some circumstances may, in theory at least,

render a director liable for losses caused by non-compliance with applicable legal standards.

*Id.* at 970 (footnote omitted).  The court recognized that this theory is "possibly the most difficult theory in corporation law upon which a plaintiff might hope to win a judgment."  *Id.* at 967. A plaintiff must establish "a sustained or systematic failure of the board to exercise oversight— such as an utter failure to attempt to assure a reasonable information and reporting system exists." *Id.* at 971.  *See also Seminaris*, 662 A.2d at 1355 ("In order to hold the directors liable [in a Caremark situation, a] plaintiff will have to demonstrate that they were grossly negligent in failing to supervise . . . .");  *David B. Shaev Profit Sharing Account v. Armstrong*, No. Civ. A. 1449-N, 2006 WL 391931, at *1 (Del.Ch., Feb. 13, 2006) ("[W]hen a board fails to act, under Delaware law, a claim will survive a motion to dismiss based on Rule 23.1 only if the plaintiff presents well-pleaded facts to suggest a reasonable inference that a majority of the directors consciously disregarded their duties over an extended period of time.").

The court may draw inferences that a defendant is liable for the misconduct alleged only to the extent that they are supported by or are consistent with the well-pleaded factual allegations. *Rosenfield v. HSBC Bank,* USA, 681 F.3d 1172, 1178 (10th Cir. 2012).  *See also In re SAIC Inc. Derivative Litigation*, 2013 WL 2466796, at * 8 ("Plaintiffs are entitled to reasonable factual inferences that flow logically from the particularized facts alleged.") (citation omitted).  The court is "not required to accept the Plaintiff's editorial characterization of its facts at face value."  *Reginella Const. Co., Ltd. v. Travelers Casualty and Surety Co. of America*, No. 12-1047, 2013 WL 4778840, at * (W.D.Pa. Sept. 5, 2013) (citation omitted).  The court's "obligation to draw inferences in the plaintiff's favor extends only to those inferences that are *reasonable*."  *Id.* (emphasis in original) (citation omitted).

Mr. Seni argues that "red flags" support a claim that the directors consciously acted in bad faith by failing to take action despite actual or constructive knowledge of misleading financial

reporting.  (*See* Doc. # 80 at 22 of 37).  Mr. Seni argues that four months after Ciber hired Mr.

Peterschmidt as CEO, it "embarked on a wholesale organizational and management

transformation of the Company, with the goal of transitioning away from lower margin to higher

margin business to drive higher revenue growth" and "to improve reporting and accountability at a

managerial level."  (*See* Doc. # 65 at ¶¶ 30, 34-35, Doc. # 80 at 22 of 37).  Mr. Seni argues that

Defendant Peterschmidt "guided the Board through the management transition."  (*See* transcript of

Motion Hearing held on August 13, 2013 (Doc. # 107 at 34 of 61)).  He alleges that Defendant

Jacobs "gained an intimate understanding of the internal controls that continued to be in flux and

the fact that a deal review committee was set up to review these legacy contracts and stated that

its review would not be done until late 2011" and that "Jacobs undoubtedly gained access to and

knowledge of the progress of the transformation in achieving these goals."  (*See* transcript of

Motion Hearing held on August 13, 2013 (Doc. # 107 at 34-35 of 61); Doc. # 80 at 18-19 of 37).

Mr. Seni argues that by attending Audit Committee meetings, Defendants Jacobs, McGill, Kurtz,

and Lauk "gained direct knowledge of the falsity of the challenged statements."  (*See* Doc. # 80 at

19-21 of 37).  He argues that Defendants Spira and Stevenson "had reason to question whether

the internal controls adequate at Ciber throughout the relevant period."  (*See* Doc. # 107 at 39 of

61).  These allegations merely recite nonremarkable duties of the Directors and do not constitute

"red flags" that support a finding that the Directors were on notice of false and misleading

statements concerning CIBER's financial condition.

The court cannot draw reasonable inferences from Mr. Seni's bald assertions and

unsupported conclusions. *Farrell v. J.E. Hamilton Correctional Center,* No. 00-7100, 12 F. App'x

788, 791 (10th Cir. April 27, 2001).  Mr. Seni alleges that Ciber recognized "issues concerning

fixed price project overruns [and] problematic legacy engagements" and that an evaluation had

been conducted "of the effectiveness of the design and operation of [Ciber's] disclosure controls

and procedures and the Company's internal control over financial reporting."  (*See* Doc. # 65 at ¶¶

38-40 (internal quotation marks omitted)).   The fact that Ciber recognized certain issues and evaluated its controls does not support "a sustained or systematic failure of the board to exercise oversight" for purposes of director liability.   *Caremark*, 698 A.2d at 971.   Rather, such recognition and evaluation supports "the opposite inference," that Defendants did not fail to exercise oversight. *Kenney,* 426 F. Supp. 2d at 1183.

Mr. Seni alleges that the Board was informed in 2009 of a criminal investigation related to a former Ciber executive and a 2005 contract with the Pennsylvania Turnpike Commission.   He alleges that the Board therefore knew that statements regarding 2011 guidance were false or misleading.   However, Mr. Seni does not adequately connect the Pennsylvania Turnpike contract to the Defendants or to any false or misleading statements made six years later.   Mr. Seni alleges actions by the former Ciber officer, the Pennsylvania Turnpike Commission, and the Pennsylvania governor, and quotes portions of the grand jury materials and news articles.   (*See* Doc. # 65 at ¶¶ 61-72*).*   He then infers that "[t]hese incidents no doubt influenced the Company's decision to embark on the 'transformation' to improve" its internal controls.   (See Doc. # 80 at 24 of 37; *see also* Doc. # 107 at 37-38 of 61).   The AC contains no factual allegations as to what each Director Defendant knew about the 2005 contract with the Pennsylvania Turnpike Commission, when he came to know it, or what actions he did or did not take.   Defendants Peterschmidt and Lauk were not Directors  when Ciber entered into the Pennsylvania Turnpike contract.   *See In re Dow Chem. Co. Deriv. Litig.*, No. 4349, 2010 WL 66769, at *13 (Del. Ch. Jan. 11, 2010) (alleged "red flags" involving different employees in unrelated transaction "simply too attenuated to support a *Caremark* claim").   The allegations regarding the Pennsylvania Turnpike contract are not sufficiently recent or similar to plausibly relate to any false or misleading statements regarding Ciber's fixed-price contracts and financial prospects for 2011.   *See In re Capital One Derivative Shareholder Litigation*, No. 1:12CV1100, 2013 WL 3242685, at *11 (E.D.Va. June 21, 2013) ("the

alleged red flags must involve or relate to conduct sufficiently similar to the alleged wrongful conduct").

Mr. Seni further alleges that Defendants were not disinterested Directors  with regard to the claim for corporate waste because the Board wasted company assets by granting certain compensation, equity, and benefits packages to current and former Ciber executives, and by amending the 2004 Incentive Plan.  Mr. Seni alleges that in 2011 the Board authorized separation payments to Defendant Cheesebrough and Tony Hadzi, Executive Vice President and President-North America Division, amendments to the CIBER 2004 Incentive Plan, a letter agreement for ongoing benefits for Defendant Stevenson after his resignation as Chairman of the Board in 2010, and modification to a stock option agreement and an award of an additional 400,000 restricted stock units to Defendant Peterschmidt.  (*See* Doc. # 65 at ¶¶ 46-53).

To the extent that these actions implicate specific board action, the *Aronson* test applies to this claim only.  *See In re SAIC Inc. Derivative Litigation*, 2013 WL 2466796, at * 7 ("Under Delaware law, when a shareholder's derivative action challenges a decision of the board of directors, the court determines whether pre-suit demand is required using the test described in *Aronson v. Lewis*, 473 A.2d 805 (Del.1984).") (citation omitted).

> The first prong of the [ Aronson ] futility rubric is whether, under the particularized facts alleged, a reasonable doubt is created that . . . the directors are disinterested and independent.  The second prong is whether the pleading creates a reasonable doubt that the challenged transaction was otherwise the product of a valid exercise of business judgment.  "[I]f either prong is satisfied, demand is excused.

*In re SAIC Inc. Derivative Litigation*, 2013 WL 2466796, at * 7. [3]  "[D]emand will be excused based on a possibility of personal director liability only in the rare case when a plaintiff is able to show

---

[3]      "Both *Aronson* and *Rales* call upon courts to ascertain whether directors were disinterested and independent."  *In re SAIC Inc. Derivative Litigation*, 2013 WL 2466796, at * 7.  "Where there is no conscious decision by directors to act or refrain from acting, the business judgment rule has no application." (*See* Doc. # 64 at 8 of 10).  "Thus, in *Rales*, the second aspect of the *Aronson* standard was determined to be irrelevant." (*See id.*).

director conduct that is "so egregious on its face that board approval cannot meet the test of business judgment, and a substantial likelihood of director liability therefore exists." *In re Citigroup Inc. Shareholder Derivative Litigation*, 964 A.2d at 120 (internal quotation marks and citation omitted).

Mr. Seni alleges that the Directors were not disinterested in that "[t]he stated purposes of the Incentive Plan, approved by Defendants Peterschmidt, Jacobs, Kurtz, Lauk, McGill, Spira, and Stevenson, are false and misleading because the actual purpose is to allow the Individual Defendants to distribute the Company's assets to themselves, to the detriment of the Company." (*See* Doc. # 65 at ¶ 50). This is a mere conclusion without any specific facts alleged to support it. Mr. Seni alleges the duties of members of the Compensation Committee but not their specific conduct. (*See, e.g.,* Doc. # 65 at ¶78, ¶ 115, ¶ 118, ¶ 120 (Defendants McGill, Kurtz, and Spira "approved excessive and unwarranted compensation and bonus awards in breach of [their] fiduciary duties.")). *See Citron ex rel. United Techs. Corp. v. Daniell*, 796 F. Supp. 649, 653 (D.Conn. 1992) (dismissing derivative action where "[a]ll of the allegations of serious misconduct on the part of the directors are stated conclusorily [sic], without specification of particular personal acts or conduct to sustain the asserted conclusions.") (applying Delaware law). Mr. Seni does not allege with particularity any facts to establish that the decisions were not valid exercises of business judgment. "[A] plaintiff must allege particularized facts that lead to a reasonable inference that the director defendants authorized an exchange that is so one sided that no business person of ordinary, sound judgment could conclude that the corporation has received adequate consideration." *Seinfeld v. Slager*, No. 6462-VCG, 2012 WL 2501105, at * 3 (Del. Ch. June 29, 2012) (internal quotation marks, footnote, and citation omitted). "Where, however, the corporation has received any substantial consideration and where the board has made a good faith judgment that in the circumstances the transaction was worthwhile, a finding of waste is

inappropriate, even if hindsight proves that the transaction may have been ill-advised." *Id.*  Mr. Seni has not alleged a failure of consideration for the challenged transactions.

The allegations in the AC do not meet the level of systemic failure required to plead a lack of proper oversight.  Mr. Seni fails to plead sufficient particularized facts establishing that the Directors consciously disregarded their oversight duties over an extended period of time.  Thus, he does not plausibly plead that the Defendants face a substantial likelihood of liability or that they were not disinterested.  The AC falls short of plausibly pleading claims of oversight sufficient to excuse the demand requirement.

      d.     Liability Insurance

Mr. Seni alleges that "Plaintiff is informed and believes that the D & O Insurance policies covering the Individual Defendants in this case contain provisions that eliminate coverage for any action brought directly by Ciber against the Individual Defendants, known as the 'insured versus insured exclusion.' " (*See* Doc. # 65 at ¶ 123).  He alleges that demand was futile and excused because "if the directors were to sue themselves or certain of the officers of Ciber, there would be no D & O Insurance protection (*See id.*).  This allegation is but a variation "on the directors suing themselves and participating in the wrongs refrain" that has "been rejected consistently" by Delaware courts and provides no particularized facts creating a reasonable doubt that the directors are disinterested.  *See Decker v. Clausen*, 1989 WL 133617, at * 2 (internal quotation marks and citations omitted).

      3.     Independence of Defendants Peterschmidt, Stevenson, and Jacobs

Because the court determines that Mr. Seni does not plead particular facts to establish that any Director Defendant has a disabling interest excusing demand, the court need not consider the independence of the Director Defendants.  *See Dow*, 2010 WL 66769, at *7, 8 ("where there is no

director who is interested in the transaction, there is no need to consider the independence of the remaining directors") (citation omitted). *See also In re INFOUSA, Inc. Shareholders Litigation*, 953 A.2d 963, 985 (Del. Ch. 2007) ("A plaintiff may also challenge a director's independence by putting forward allegations that raise a reasonable inference that a given director . . . is so beholden to an interested director that his or her "discretion would be sterilized.") (citation omitted); *In re Tyson Foods, Inc.*, 919 A.2d 563, n. 42 (Del. Ch. 2007) ("Once the interest of certain directors "is called into question, a doubt is raised as to the independence of other directors."); *In re Oracle Corp. Derivative Litigation*, 824 A.2d 917, 938 (Del. Ch. 2003) ("[A] director may be compromised if he is beholden to an interested person."); *Zimmerman v. Crothall*, No. 6001-VCP, 2012 WL 707238, at * 13 (De. Ch. March 5, 2012) (to support an inference that a director lacked independence, . . . a plaintiff must make specific factual allegations of such material connections as financial ties, familial affinity, a particularly close or intimate personal or business affinity or . . . evidence that in the past the relationship caused the director to act non-independently vis-à-vis an interested director.") (internal quotation marks and citation omitted); *In re Affiliated Computer Services, Inc.*, No. 2821-VCL, 2009 WL 296078, at * 9 (Del. Ch. Feb. 6, 2009) ("a director lacks independence if he or she is dominated or controlled by an interested party") (citation omitted). Even if the court considers the independence of the three Director Defendants, Mr. Seni has not adequately alleged a lack of independence. There are no facts alleged that the Directors were "beholden to other directors or so under their influence that their discretion would be sterilized." *Kenney*, 426 F. Supp. 2d at 1185 (internal quotation marks and citations omitted). The limited-term benefits received by Defendant Stevenson (*see* Doc. # 65 at ¶ 105*)* are not sufficiently substantial or significant to establish a lack of independence*. See In re eBay, Inc. Shareholders Litigation*, No. 19988-NC, 2004 WL 253521, at * 2-3 (De. Ch. Jan. 23, 2004) (plaintiff raised reasonable doubt as to independence of directors who received and expected to receive additional "huge financial benefits . . . worth potentially millions of dollars"). Nor do the Director Defendants' length of tenure and

17

"high-rank[ ]" as officers of Ciber (*see* Doc. # 65 at ¶¶ 101, 104 111; Doc. # 80 at 26 of 37) support

a lack of independence.  *See In re Pfizer, Inc. Derivative Securities Litigation*, No. 07-3547-cv, 307

F. App'x 590, 595 (2d Cir.2009) ("It is well established under Delaware law that the number of

years that defendants have served on a board or multiple boards together cannot suffice as a

basis to successfully plead a lack of independence for demand futility purposes.")


IV.     Conclusion

        Even accepting Mr. Seni's allegations as true, the AC fails to plead with particularity facts

creating a reasonable doubt that the Director Defendants were incapable of exercising

independent and disinterested business judgment in responding to a demand.  The AC lacks

specific allegations that support each Director 's knowledge and actions.  The AC does not cure

the "group pleading" problem raised by District Judge Blackburn.  The allegations are still founded

on group conduct, such as Board and Committee membership, approval, and signing of filings.

There is little distinction between those who allegedly made the challenged statements and those

who did not.  *See* Doc. # 65 at ¶¶ 127-42; see also ¶ 7 ("each of the Individual Defendants" knew

that statements regarding Ciber's internal controls were false or misleading simply "due to their

positions as officers and directors of the Company").  The AC is therefore properly dismissed

pursuant to Rule 23.1 and 12(b)(6).


        Accordingly, IT IS RECOMMENDED that:

        1.      Defendants' Motion to Dismiss the Amended Complaint (filed May 20, 2013) (Doc. #

72) be granted and this civil action be dismissed pursuant to Fed.R.Civ.P. 23.1 and 12(b)(6).

        2.      Defendants' Motion to Stay Discovery and Vacate Related Deadlines (filed July 10,

2013) (Doc. # 92) be granted and discovery be stayed at this time, in light of the Recommendation

regarding Defendants' Motion to Dismiss the Amended Complaint.

**Advisement to the Parties**

Within fourteen days after service of a copy of the Recommendation, any party may serve and file written objections to the Magistrate Judge's proposed findings and recommendations with the Clerk of the United States District Court for the District of Colorado.  28 U.S.C. § 636(b)(1); Fed. R. Civ. P. 72(b);  *In re Griego*, 64 F.3d 580, 583 (10th Cir. 1995).  A general objection that does not put the District Court on notice of the basis for the objection will not preserve the objection for *de novo* review.  "[A] party's objections to the magistrate judge's report and recommendation must be both timely and specific to preserve an issue for de novo review by the district court or for appellate review."  *United States v. One Parcel of Real Property Known As 2121 East 30th Street, Tulsa, Oklahoma*, 73 F.3d 1057, 1060 (10th Cir. 1996).  Failure to make timely objections may bar *de novo* review by the District Judge of the Magistrate Judge's proposed findings and recommendations and will result in a waiver of the right to appeal from a judgment of the district court based on the proposed findings and recommendations of the magistrate judge. *See Vega v. Suthers*, 195 F.3d 573, 579-80 (10th Cir. 1999) (District Court's decision to review a Magistrate Judge's recommendation *de novo* despite the lack of an objection does not preclude application of the "firm waiver rule"); *International Surplus Lines Insurance Co. v. Wyoming Coal Refining Systems, Inc.*, 52 F.3d 901, 904 (10th Cir. 1995) (by failing to object to certain portions of the Magistrate Judge's order, cross-claimant had waived its right to appeal those portions of the ruling); *Ayala v. United States*, 980 F.2d 1342, 1352 (10th Cir. 1992) (by their failure to file objections, plaintiffs waived their right to appeal the Magistrate Judge's ruling).  *But see, Morales-Fernandez v. INS*, 418 F.3d 1116, 1122 (10th Cir. 2005) (firm waiver rule does not apply when the interests of justice require review).

DATED at Denver, Colorado this 17th day of December, 2013.

BY THE COURT:


s/Craig B. Shaffer
United States Magistrate Judge