IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLORADO

Civil Action No. 12-cv-00320-REB-CBS

JOHN SENI, Derivatively on Behalf of CIBER, INC.,
     Plaintiff,
v.

DAVID C. PETERSCHMIDT,
CLAUDE J. PUMILIA,
PETER H. CHESSBROUGH,
PAUL JACOBS,
STEPHEN S. KURTZ,
KURT J. LAUK,
ARCHIBALD J. MCGILL, and
JAMES C. SPIRA,
     Defendants,
and

CIBER, INC.,
     Nominal Defendant.

---

## RECOMMENDATION OF UNITED STATES MAGISTRATE JUDGE

---

Magistrate Judge Craig B. Shaffer

This civil action comes before the court on Defendants' Motion to Dismiss the Second Amended Complaint.  The court has reviewed the Motion, Plaintiff's Opposition (filed April 22, 2014) (Doc. # 133), Defendants' Reply (filed May 7, 2014) (Doc. # 134), the pleadings, the entire case file, and the applicable law and is sufficiently advised in the premises.

I.     Statement of the Case

This is a shareholder derivative action brought against certain current and former officers and directors of CIBER, Inc.  (*See* Second Amended Verified Complaint ("SAC") (Doc. # 119) at 2 of 69, ¶ 121).  Mr. Seni, a resident of Illinois, holds CIBER common stock that he purchased

1

on January 6, 2011. (*See id.* at ¶ 15). CIBER is a Delaware corporation with principal executive offices located in Greenwood Village, Colorado. (See Doc. # 119 at ¶ 16). CIBER is a global information technology consulting, services, and outsourcing company for both commercial and government clients. (*See id.*). The services offered by CIBER include application development and management, enterprise resource planning implementation, change management, project management, systems integration, infrastructure management and end-user computing, and strategic business and technology consulting. (*See id.* at ¶¶ 16, 26). Defendant Peterschmidt is a resident of Colorado and is CIBER's President, CEO, and a director since July 2010. (See Doc. # 119 at 17). Defendant Pumilia, a Colorado resident, is CIBER's Executive Vice President, Chief Financial Officer ("CFO"), and Treasurer since April 2011. (*See id.* at ¶ 18). Defendant Cheesbrough, a resident of Colorado, was CIBER's Executive Vice President and CFO from October 2007 to April 2011, Treasurer from February 2008 to April 2011, a director from November 2002 to April 2011, and Interim CEO and President from April 2010 to July 2010. (*See id.* at ¶ 19). Defendant Jacobs is a resident of Colorado, began serving on the Board in 2005, became Chairman on April 11, 2010, and is a member of the Audit Committee and the Chair of the Nominating/Governance Committee. (*See id.* at ¶ 20). Defendant McGill, a resident of Arizona, has served as a director of CIBER since 1998 and is a member of the Audit and Compensation Committees. (*See id.* at ¶ 21). Defendant Kurtz, a Colorado resident, has served as a director of CIBER since December 2007 and is the Chairman of the Audit and Compensation Committees. (*See id.* at ¶ 22). Defendant Spira is an Ohio resident, served as a director from 1994 to 1998 and again from 2002 to the present, and is a member of the Compensation and Nominating/ Governance Committees. (*See id.* at ¶ 23). Defendant Lauk is a resident of California, a director of CIBER, and a member of the Audit Committee. (*See id.* at

¶ 24).  The court has jurisdiction over this case based on diversity of citizenship under Title 28 U.S.C. § 1332.

On March 22, 2013, District Judge Blackburn granted Defendants' initial Motion to Dismiss, finding that Mr. Seni failed "to make sufficiently specific allegations addressing each defendant individually" and that his "group pleading" did "not provide the specificity required" by Rules 12 and 8, as interpreted in *Ashcroft v. Iqbal*, 556 U.S. 662 (2009) and *Bell Atl. Corp. v. Twombly*, 550 U.S. 544 (2007).  (*See* Order Granting Motion to Dismiss (Doc. # 64) at 5 of 10). With Judge Blackburn's permission, Mr. Seni filed his Amended Complaint on April 26, 2013. (*See id.* at 9 of 10;  Doc. # 65).  On May 20, 2013, Defendants and Nominal Defendant moved to dismiss the Amended Complaint.  (*See* Doc. # 72).  Judge Blackburn referred the Motion to Dismiss to the Magistrate Judge on July 10, 2013.  (*See* Doc. # 90).  On December 17, 2013, the Magistrate Judge recommended that the Amended Complaint be dismissed pursuant to Fed. R. Civ. P. 23.1 and 12(b)(6).  (*See* Doc. # 113).  In the absence of any objection by any party, Judge Blackburn approved and adopted the Recommendation and *sua sponte* permitted Mr. Seni to file a motion to amend his complaint.  (*See* Doc. # 115).  The SAC was accepted by the court and filed on February 27, 2014.  (*See* Doc. # 119).  On March 24, 2014, Defendants filed the instant Motion to Dismiss the SAC.  (*See* Doc. # 125).  Pursuant to the Order Referring Motions dated March 24, 2014 (Doc. # 127), the Motion was referred to the Magistrate Judge.

This civil action arises "out of the Individual Defendants' decision to issue materially false and misleading statements concerning CIBER's financial results and business prospects in connection with a Company-wide transformation and leadership transition in 2010 and 2011." (*See* Doc. # 119 at ¶ 1).  In November 2010, CIBER identified problems with its operational organization and announced "plans for a major restructuring of the Company's operations," to begin in fiscal year 2011.  (*See id.* at ¶¶ 29-31, 33).  CIBER also announced its long-term

business outlook and financial guidance for fiscal year 2011. (*See id.* at ¶ 42). On August 3, 2011, CIBER reported its results for the second quarter of 2011, and suspended guidance for 2011. (*See id.* at ¶¶ 97-98). CIBER announced that its overall performance for 2011 had been "adversely affected by issues in our North American business and on the balance sheet" and stated: "[s]pecifically, as a result of a more disciplined approach to managing CIBER, we identified five fixed-price contracts signed in 2009 or earlier in the United States that no longer carry the same level of profitability and thus diminished earnings in the quarter." (*See* Doc. # 119 at ¶ 98).

Mr. Seni alleges that in 2010 and 2011, Defendants "made (or caused CIBER to make) numerous false or misleading statements about the progress of the transformation and its impact on the Company's financial health and internal controls," and regarding the long term business outlook and financial guidance for fiscal year 2011. (*See* Doc. # 119 at ¶¶ 38, 41, 45, 46, 49, 52, 56, 58). He alleges that "Defendants Peterschmidt, Cheesbrough, and Pumilia, individually and on behalf of the Company, made false and misleading statements in public filings, press releases, and conference calls that touted the Company's positive financial results, significant growth, and presented aggressive forward guidance" and that Defendants, Jacobs, Kurtz, Lauk, McGill, and Spira, "each gained contemporaneous, direct access to non-public facts demonstrating that these public statements were materially false and misleading." (*See* Doc. # 119 at ¶ 2). Mr. Seni asserts three claims against the Individual Defendants for: (1) breach of fiduciary, (2) unjust enrichment, and (3) corporate waste. (*See* Doc. # 119 at ¶¶ 143-58).

II.     Standard of Review

Defendants move to dismiss the SAC pursuant to Federal Rules of Civil Procedure 23.1 for failure to plead demand futility and 12(b)(6) for failure to state a claim to which relief can be granted.  Rule 23.1 "establishes the procedural requirements for bringing a shareholder derivative suit in federal court." *Kenney v. Koenig*, 426 F. Supp. 2d 1175, 1180 (D. Colo. 2006). "[T]he management of corporations is entrusted to their boards of directors," and "shareholders typically are foreclosed from suing on behalf of a corporation on a claim that the corporation itself has not brought." *Loveman v. Lauder*, 484 F. Supp. 2d 259, 264 (S.D.N.Y. 2007).  An exception is that a shareholder may sue derivatively on behalf of a company.  "The derivative form of action permits an individual shareholder to bring suit to enforce a corporate cause of action against officers, directors, and third parties." *Kamen v. Kemper Financial Services, Inc.*, 500 U.S. 90, 96 (1991) (internal quotation marks and citation omitted).  "Devised as a suit in equity, the purpose of the derivative action was to place in the hands of the individual shareholder a means to protect the interests of the corporation from the misfeasance and malfeasance of 'faithless directors and managers.'" *Id.* (internal quotation marks and citation omitted).

"To prevent abuse of this remedy, however, equity courts established as a precondition for the suit that the shareholder demonstrate that the corporation itself had refused to proceed after suitable demand, unless excused by extraordinary conditions." *Kamen*, 500 U.S. at 96 (internal quotation marks and citation omitted).  "The purpose of the demand requirement is to affor[d] the directors an opportunity to exercise their reasonable business judgment and waive a legal right vested in the corporation in the belief that its best interests will be promoted by not insisting on such right." *Id.* (internal quotation marks and citation omitted).  A shareholder may sue derivatively on behalf of a company if the shareholder sufficiently alleges that a demand

would be a futile gesture and is therefore excused.  *Loveman*, 484 F. Supp. 2d at 265 (citation omitted).  "Ordinarily, it is only when demand is excused that the shareholder enjoys the right to initiate suit on behalf of his corporation in disregard of the directors' wishes."  *Kamen*, 500 U.S. at 96 (internal quotation marks and citation omitted).  A complaint must "allege with particularity any effort by the plaintiff to obtain the desired action from the directors" and "the reasons for not obtaining the action or not making the effort."  Fed. R. Civ. P. 23.1(b)(3).

Rule 12(b)(6) permits dismissal of a complaint for "failure to state a claim upon which relief can be granted."  "Motions to dismiss for failure to allege demand futility are considered under Fed. R. Civ. P. 12(b)(6)."  *In re Keithley Instruments, Inc. Derivative Litigation*, 599 F. Supp. 2d 875, 888 (N.D. Ohio 2008) (citation omitted).  "The difference between the 12(b)(6) and 23.1 standards is in the level of detail demanded of the plaintiff's allegations."  *Desimone v. Barrows*, 924 A. 2d 908, 928 (Del. Ch. 2007).  "Because the standard under Rule 12(b)(6) is less stringent than that for pleading factual particularity under Rule 23.1, where [a] plaintiff alleges particularized facts sufficient to prove demand futility under the second prong of *Aronson*, that plaintiff a fortiori rebuts the business judgment rule for the purpose of surviving a motion to dismiss pursuant to Rule 12(b)(6)."  *Ausikaitis on behalf of Masimo Corporation v. Kiani,* 962 F.Supp.2d 661, 679 (D. Del. 2013) (internal quotation marks and citations omitted).


III.    Analysis

The parties agree that the demand requirements for this derivative suit are determined by Delaware law.  (See "Order Granting Motion to Dismiss" (Doc. # 64) (internal quotation marks, citations, and footnotes omitted)).  "Under Delaware law, the right of a stockholder to prosecute a derivative action is limited to situations where the stockholder has demanded that the directors pursue the corporate claim and they have wrongfully refused to do so or where demand is

excused because the directors are incapable of making an impartial decision regarding such litigation." (*See* Doc. # 64) (citing *Rales v. Blasband*, 634 A.2d 927, 932 (Del. 1993)) (internal quotation marks and footnotes omitted).  Mr. Seni alleges that he "did not make a pre-suit demand on the Board to pursue this action, because such a demand would have been a futile and wasteful act." (*See* Doc. # 119 at ¶ 124).  "The demand requirement can be excused if the plaintiff pleads particular facts creating a reasonable doubt that the majority of the board would be disinterested or independent in making a decision on a demand." (*See* Doc. # 64 at 8 of 10).  *See Rales*, 634 A.2d at 935 ("[T]he board must be able to act free of personal financial interest and improper extraneous influences.").

"Rule 23.1 speaks only to the adequacy of the shareholder representative's pleadings," *Kamen*, 500 U.S. at 96, and "demand[s] atypically rigorous pleading by plaintiffs."  *In re SAIC Inc. Derivative Litigation*, No. 12 Civ. 2437(JPO), 2013 WL 2466796, at * 15 (S.D.N.Y. June 10, 2013).  "To establish that demand is excused under Rule 23.1, the pleadings must comply with stringent requirements of factual particularity and set forth particularized factual statements that are essential to the claim."  *In re Citigroup Inc. Shareholder Derivative Litigation*, 964 A.2d 106, 120 (Del. Ch. 2009) (internal quotation marks and citation omitted).  Demand is excused if "under the particularized facts alleged, a reasonable doubt is created that: (1) the directors are disinterested and independent and (2) the challenged transaction was otherwise the product of a valid exercise of business judgment."  *Aronson v. Lewis*, 473 A.2d 805, 814 (Del. 1984), *overruled on other grounds by Brehm v. Eisner*, 746 A.2d 244 (Del. 2000).  A director is considered to be interested if he will be "materially affected, either to his benefit or detriment, by a decision of the board, in a manner not shared by the corporation and the stockholders."  *Seminaris v. Landa*, 662 A.2d 1350, 1354 (Del. Ch. 1995).  *See also Aronson*, 473 A.2d at 814 ("directorial interest also exists where a corporate decision will have a materially detrimental

impact on a director, but not on the corporation and the stockholders").  A director is considered to be independent if his decision is based on "the corporate merits of the subject before the board rather than extraneous considerations or influences."  *Aronson*, 473 A.2d at 816.  "If the derivative plaintiff satisfies this burden, then demand will be excused as futile."  *Rales*, 634 A.2d at 934.

Defendants continue to argue that Mr. Seni fails to adequately plead that demand was excused as futile.  Mr. Seni argues that his allegations state a "reason to doubt" that a majority of CIBER's Board "could disinterestedly or independently consider such a demand."  (See Doc. # 133 at 4 of 20).

A.    Interest

Mr. Seni argues that at least half of CIBER's Board members were not disinterested due to the substantial likelihood of personal liability for breach of fiduciary duties.[1]  "[W]here a director is charged with deciding whether to bring a derivative suit naming himself or herself as a defendant the director is potentially interested because he could face personal liability."  *Kenney,* 426 F. Supp. 2d at 1181.  "Under *Rales*, defendant directors who face a substantial likelihood of personal liability are deemed interested in the transaction and thus cannot make an impartial decision."  *In re Goldman Sachs Group, Inc. Shareholder Litigation*, No. 5215-VCG, 2011 WL 4826104, at * 18 (Del. Ch. Oct. 12, 2011).  Plaintiffs are entitled to a reasonable

---

[1]      Where, as here, "a plaintiff's complaint has been dismissed and the plaintiff is given leave to file an amended complaint, . . . the plaintiff must make a demand on the board of directors in place at that [sic] time the amended complaint is filed or demonstrate that demand is legally excused as to that board."  *Braddock v. Zimmerman*, 906 A.2d 776, 786 (Del. 2006).  *See also In re SAIC Inc. Derivative Litigation*, 2013 WL 2466796, at * 8 ("[F]utility is gauged by the circumstances existing at the commencement of a derivative suit and such reasonable doubt must be raised as to a majority of the board of directors sitting at the time the complaint is filed.") (internal quotation marks and citation omitted).  Michael Boustridge joined the Board on March 22, 2013, bringing the number of directors who would consider a demand to nine.  Mr. Boustridge is not named as a defendant in this action.

inference of interestedness where a complaint indicates a "substantial likelihood" of liability will be found. *See Rales*, 634 A.2d at 936; *Aronson*, 473 A.2d at 815. The standard is difficult to meet and "the mere threat of personal liability in the derivative action does not render a director interested." *See Seminaris*, 662 A.2d at 1354 (describing the "rare case, envisioned by the Supreme Court in *Aronson*, where defendants' actions were so egregious that a substantial likelihood of director liability exists"). "A simple allegation of potential directorial liability is insufficient to excuse demand, else the demand requirement itself would be rendered toothless, and directorial control over corporate litigation would be lost." *In re Goldman Sachs Group, Inc. Shareholder Litigation*, 2011 WL 4826104, at * 18.

"The likelihood of directors' liability is significantly lessened where, as here, the corporate charter exculpates the directors from liability to the extent authorized by 8 Del. C. § 102(b)(7)." *In re Goldman Sachs Group, Inc. Shareholder Litigation*, 2011 WL 4826104, at * 18. "Because [CIBER]'s charter contains such a provision, shielding directors from liability for breaches of the duty of care (absent bad faith) a serious threat of liability may only be found to exist if the plaintiff pleads a non-exculpated claim against the directors based on particularized facts." *Id.* (internal quotation marks and citation omitted). [2] "This means that plaintiffs must plead particularized facts showing bad faith in order to establish a substantial likelihood of personal directorial liability." *In re Goldman Sachs Group, Inc. Shareholder Litigation*, 2011 WL 4826104, at * 18.

---

[2]       See Restated Certificate of Incorporation Art. 9, Exhibit J (Doc. # 129-10 at 9 of 11); *In re Lear Corp. Shareholder Litig.*, 967 A.2d 640, 648 n.26 (Del. Ch. 2008) (Section 102(b)(7) may be considered at the motion to dismiss stage).

1.      Oversight

Mr. Seni alleges that Defendants breached their fiduciary duties by failing to exercise proper oversight over the issuance of CIBER's financial and other public statements related to internal controls and 2011 guidance.  (*See* Doc. # 119 at ¶¶ 38-58).  He alleges that the Defendants "each breached their duty of loyalty and good faith by allowing Defendants to cause, or by themselves causing, the Company to make false and/or misleading statements, or by failing to take any actions to correct the false and/or misleading statements."  (*See* Doc. # 119 at ¶ 111;  *see also* ¶¶ 41, 45, 46, 49, 52, 56, 58).  A claim predicated upon the Defendants' failure to oversee is governed by the standard set forth in *In re Caremark Int'l, Inc. Deriv. Litig.*, 698 A.2d 959 (Del.Ch. 1996).  The *Caremark* court described a director's duty to oversee as follows:

> [A] director's obligation includes a duty to attempt in good faith to assure that a corporate information and reporting system, which the board concludes is adequate, exists, and that failure to do so under some circumstances may, in theory at least, render a director liable for losses caused by non-compliance with applicable legal standards.

*Id.* at 970 (footnote omitted).  The court recognized that this theory is "possibly the most difficult theory in corporation law upon which a plaintiff might hope to win a judgment."  *Id.* at 967.  A plaintiff must establish "a sustained or systematic failure of the board to exercise oversight— such as an utter failure to attempt to assure a reasonable information and reporting system exists."  *Caremark*, 698 A.2d at 971.  *See also David B. Shaev Profit Sharing Account v. Armstrong*, No. Civ. A. 1449-N, 2006 WL 391931, at *1 (Del.Ch. Feb. 13, 2006) ("[W]hen a board fails to act, under Delaware law, a claim will survive a motion to dismiss based on Rule 23.1 only if the plaintiff presents well-pleaded facts to suggest a reasonable inference that a majority of the directors consciously disregarded their duties over an extended period of time.").  "[T]o establish oversight liability a plaintiff must show that the directors knew they were not discharging their fiduciary obligations or that the directors demonstrated a conscious disregard

for their responsibilities such as by failing to act in the face of a known duty to act." *In re Dow Chemical Co. Derivative Litigation*, No. 4349-CC, 2010 WL 66769, at *12 (Del. Ch. Jan 11, 2010) (emphasis and citation omitted). "[T]he test is rooted in concepts of bad faith; indeed, a showing of bad faith is a necessary condition to director oversight liability." *Id.* "Only an utter failure will satisfy a showing of bad faith." *Id.* (citations omitted)

Once again, the court is compelled to conclude that Mr. Seni does not plausibly plead a failure of oversight sufficient to excuse the demand requirement. He alleges that Defendants Kurtz, McGill, Jacobs, Spira, and Lauk had "access to facts that directly contradicted the very statements about the transformation that they approved, authorized, or failed to correct." (*See* Doc. # 119 at ¶ 64). He contends that Defendants Kurtz, McGill, Lauk, and Jacobs learned such facts through their duties as members of CIBER's Board and on the Transition, Search, Audit, and Deal Review Committees. (*See* Doc. # 119 at ¶¶ 65-67, 75; Doc. # 133 at 14-16 of 20). Mr. Seni continues to rely on the directors' membership on board committees to plead knowledge, alleging the duties of Defendants as members of several Committees and inferring their knowledge from those duties. *See Kenney*, 426 F. Supp. 2d at 1183 ("a director's mere membership on an audit committee during the relevant period does not suffice to create a substantial likelihood of liability"). The allegations recite merely responsibilities of the Defendants and do not support a finding of bad faith in order to establish a substantial likelihood of personal directorial liability. *See In re Goldman Sachs Group, Inc. Shareholder Litigation*, 2011 WL 4826104, at * 18 ("plaintiffs must plead particularized facts showing bad faith in order to establish a substantial likelihood of personal directorial liability").

Mr. Seni alleges that Defendant Kurtz "received updates about the progress and timing of the fulfillment of the transformation's key initiatives" and "on particular aspects of the transformation . . . including the status of CIBER's IT infrastructure overhaul and operational

regimen changes." The alleged conduct by Defendant Kurtz includes receiving and reviewing reports, "monitor[ing]," "confirm[ing]," and "approv[ing]." (*See* Doc. # 119 at ¶¶ 65-66, 69-73). Mr. Seni then conclusorily alleges that Defendant Kurtz "knew or recklessly disregarded that the Company's internal controls were not adequate" and that "no reasonable basis existed to offer FY 2011 guidance." (*See* Doc. # 119 at ¶¶ 74-75). He alleges that Defendant McGill "gained direct access to CIBER's internal financial reports, financial risk data, internal financial disclosure controls data, and internal audit reports with respect to the Company's financial risk and reporting controls." (See Doc. # 119 at ¶ 81). The alleged conduct by Defendant McGill includes "assist[ing]," "review[ing]," and "learn[ing]." (*See* Doc. # 119 at ¶¶ 78-82). Mr. Seni then alleges his conclusion regarding Defendant McGill's "knowledge or reckless disregard that no reasonable basis existed to offer FY 2011 guidance." (*See* Doc. # 119 at ¶ 84; Doc. # 133 at 15 of 20). *See Citron ex rel. United Techs. Corp. v. Daniell*, 796 F. Supp. 649, 653 (D.Conn. 1992) (dismissing derivative action where "[a]ll of the allegations of serious misconduct on the part of the directors are stated conclusorily [sic], without specification of particular personal acts or conduct to sustain the asserted conclusions.") (applying Delaware law).

Mr. Seni's allegations against Defendants Jacobs, Spira, and Lauk are even thinner. He alleges that Defendant Jacobs "gained access to and knowledge of the inner workings of the Company's transition, and as a result, of the significant problems facing the Company throughout 2011." (*See* Doc. # 119 at ¶ 86). He then argues that "Jacobs undoubtedly gained access to and knowledge of the progress of the transformation in achieving these goals." (*See* Doc. # 133 at 16 of 20). He alleges that Defendant Spira "learned about the contemporaneous, non-public, adverse facts contradicting the Officer Defendants' public statements about the transformation discussed at ¶¶ 65-67." (*See* Doc. # 119 at ¶ 88). Mr. Seni alleges that Defendant Lauk was "aware of the significant risks facing CIBER throughout 2011 with respect

12

to potentially unidentified low-margin legacy contracts . . . ." (*See* Doc. # 119 at ¶ 91).  He

alleges that Defendant Lauk's "oversight and advice would have made Lauk aware of ongoing

risks facing CIBER's internal control systems throughout 2011 . . . "  (*See id.*).

Mr. Seni fails to allege specifically what each Defendant knew about any problems with

the internal controls, how and when each director came to have this knowledge, and what

actions each director failed to take.  *See Wood v. Baum*, 953 A.2d 136, 142 (Del. 2008) (Under

Delaware law, "[t]he Board's execution of . . . financial reports, without more, is insufficient to

create an inference that the Directors had actual or constructive notice of any illegality.");

*Aronson*, 473 A.2d at 817 ("In Delaware mere directorial approval of a transaction, absent

particularized facts supporting a breach of fiduciary duty claim, or otherwise establishing the

lack of independence or dis-interestedness of a majority of directors, is insufficient to excuse

demand.");  *Andropolis v. Snyder*, Nos. 05-cv-01563-EWN-BNB, 05-cv-01903-EWN-BNB, 05-

cv-01707-EWN-BNB, 2006 WL 2226189, at *14 (D. Colo. Aug. 3, 2006) ("simply because the . .

. complaint lists a body of rules that may have been violated and the director defendants

membership during that time, that is not sufficient to create a substantial likelihood of liability");

*Decker v. Clausen*, Nos. CIV. A. 10,684, 10,685, 1989 WL 133617, at *2 (Del. Ch. Nov. 6, 1989)

(conclusory allegations that "directors participated in and/or approved the alleged wrongs . . .

have been rejected consistently by our courts").  On these allegations that Defendants were

aware of operational problems and signed misleading reports and statements, the court cannot

conclude that this is the rare case where Defendants' actions were so egregious that a

substantial likelihood of director liability exists.

Mr. Seni conclusorily alleges that Defendant Peterschmidt faces a substantial likelihood

of liability for knowingly making false and misleading statements without a reasonable basis

regarding CIBER's contracts.  (*See* Doc. # 119 at ¶¶ 31, 34, 38;  Doc. # 133 at 13-14 of 20).

The alleged false and misleading statements were made in public disclosures.  (See Doc. # 119 at ¶¶ 30-31, 39-58).  Mr. Seni describes detailed disclosures Defendants made about CIBER's financial condition.  Mr. Seni alleges that Defendants "created a rigorous oversight structure designed to regularly monitor the progress of the transformation."  (See Doc. # 119 at ¶ 33).  He relies on forecasts, opinions, and "optimistic statements" about the future rather than particularized facts establishing that the Directors consciously disregarded their oversight duties over an extended period of time.  (See Doc. # 119 at ¶¶ 40, 42, 44, 47-48, 54-55, 63).  Mistakes in estimation do not plausibly support that the estimates were fraudulently conceived.  *See Trenwick Am. Litig. Trust v. Ernst & Young, LLP*, 906 A.2d 168, 209-10 (Del.Ch. 2006) ("statements of expectation or opinion about the future of the company and the hoped for results of business strategies . . . are generally not actionable under Delaware law") (citations omitted); *Great Lakes Chem. Corp. v. Pharmacia Corp.*, 788 A.2d 544, 554 (Del. Ch. 2001) ("Predictions about the future cannot give rise to actionable common law fraud.  Nor can expressions of opinion.").  The allegations do not support "a sustained or systematic failure of the board to exercise oversight" for purposes of director liability.  *Caremark*, 698 A.2d at 971.  Rather, the allegations support "the opposite inference," that Defendants endeavored "a wholesale overhaul of CIBER's organizational and managerial structure, as well as the implementation of new strategic initiatives designed to improve the Company's financial performance."  (*See* Doc. # 119 at ¶ 3*). See Kenney,* 426 F. Supp. 2d at 1183.

Mr. Seni also alleges that Defendants "were motivated to artificially inflate revenues and CIBER's stock price . . . by the terms of their employment agreements, which tied their compensation directly to CIBER's reported earnings" and that "[t]he stated purposes of the Incentive Plan, approved by Defendants Peterschmidt, Jacobs, Kurtz, Lauk, McGill, Spira, and Stevenson, are false and misleading because the actual purpose is to allow the Individual

Defendants to distribute the Company's assets to themselves, to the detriment of the Company" (s*ee* Doc. # 119 at ¶¶ 93, 96). These allegations state conclusions without sufficient facts to support them. While Mr. Seni is "entitled to reasonable factual inferences that flow logically from the particularized facts alleged," *In re SAIC Inc. Derivative Litigation*, 2013 WL 2466796, at * 8, the court is "not required to accept the Plaintiff's editorial characterization of its facts at face value." *Reginella Const. Co., Ltd. v. Travelers Casualty and Surety Co. of America*, No. 12-1047, 2013 WL 4778840, at * (W.D. Pa. Sept. 5, 2013) (citation omitted). The court's "obligation to draw inferences in the plaintiff's favor extends only to those inferences that are *reasonable*." *Id.* (emphasis in original) (citation omitted).

B.      Independence

Mr. Seni alleges that Defendant Peterschmidt was not independent "because he is and was a high-ranking officer of CIBER during the time period when the wrongdoing occurred." (See Doc. # 119 at ¶ 126). Because the court determines that Mr. Seni does not plead particular facts to establish that any Director Defendant has a disabling interest excusing demand, the court need not consider the independence of the Director Defendants. *See Dow*, 2010 WL 66769, at *7, 8 ("where there is no director who is interested in the transaction, there is no need to consider the independence of the remaining directors") (citation omitted); *In re INFOUSA, Inc. Shareholders Litigation*, 953 A.2d 963, 985 (Del. Ch. 2007) ("A plaintiff may also challenge a director's independence by putting forward allegations that raise a reasonable inference that a given director . . . is so beholden to an interested director that his or her "discretion would be sterilized.") (citation omitted); *Zimmerman v. Crothall*, No. 6001-VCP, 2012 WL 707238, at * 13 (Del. Ch. March 5, 2012) (to support an inference that a director lacked independence, . . . a plaintiff must make specific factual allegations of such material connections

15

as financial ties, familial affinity, a particularly close or intimate personal or business affinity or . .
. evidence that in the past the relationship caused the director to act non-independently vis-à-vis
an interested director") (internal quotation marks and citation omitted); *In re Affiliated Computer
Services, Inc.*, No. 2821-VCL, 2009 WL 296078, at * 9 (Del. Ch. Feb. 6, 2009) ("a director lacks
independence if he or she is dominated or controlled by an interested party") (citation omitted).

Even if the court considers the independence of Defendant Peterschmidt, Mr. Seni has
not adequately alleged a lack of independence.  Mr. Seni's allegation of Defendant
Peterschmidt's mere high rank as an officer of CIBER does not support a lack of independence,
as the cases he cites are easily distinguished by their facts.  *See In re Student Loan Corp.
Derivative Litig.*, No. C.A. 17799, 2002 WL 75479, at *3 (Del. Ch. Jan. 8, 2002) (finding
allegations that student loan originator was wholly owned subsidiary of corporation to which a
majority of directors were beholden sufficient to show lack of independence); *Rales*, 634 A.2d
at 937 (finding particularized facts that directors were under "considerable influence" and
beholden to other directors sufficient to create reasonable doubt that directors were capable of
acting independently); *In re Cooper Cos. Shareholders Derivative Litig.*, No. 12584, 2000 WL
1664167, at ** 6-7 (Del. Ch. Oct. 31, 2000) (allegations that directors personally profited from
illegal transactions sufficient to create reason to doubt independence of majority of board);
*Mizel v. Connelly*, No. Civ. A. 16638, 1999 WL 550369, at * (Del. Ch. July 22, 1999)
(particularized allegations that four of five members of the board were beholden to corporation's
largest stockholder sufficient to show lack of independence); *In re TASER Int'l Shareholder
Derivative Litig.*, 2006 WL 687033, at * (D. Ariz. Mar. 17, 2006) (allegations including that every
director engaged in insider trading for a combined $88 million in common stock were sufficient
to create reasonable doubt that a majority of the board could act independently).  There are no
facts alleged here that Defendant Peterschmidt was "beholden to other directors or so under

16

their influence that [his] discretion would be sterilized." *Kenney*, 426 F. Supp. 2d at 1185

(internal quotation marks and citations omitted).  Nor is it alleged that a majority of the Board

could not act independently.

In sum, the court concludes that the SAC falls short of pleading plausible facts to

establish that a majority of the Board could not impartially consider a demand, in order to

excuse the demand requirement of Fed. R. Civ. P. 23.1.  The SAC is properly dismissed

pursuant to Rule 23.1 and 12(b)(6).

Accordingly, IT IS RECOMMENDED that:

1.      Defendants' Motion to Dismiss the Second Amended Complaint (filed March 24,

2014) (Doc. # 125) be GRANTED and this civil action be dismissed pursuant to Fed.R.Civ.P.

23.1 and 12(b)(6).

FURTHER IT IS ORDERED that, in the absence of any objection, Defendants' "Request

for Judicial Notice and Notice of Incorporation by Reference in Further Support of Defendants'

Motion to Dismiss the Second Amended Complaint" (filed May 7, 2014) (Doc. # 136) is

GRANTED.

**Advisement to the Parties**

Within fourteen days after service of a copy of the Recommendation, any party may

serve and file written objections to the Magistrate Judge's proposed findings and

recommendations with the Clerk of the United States District Court for the District of Colorado.

28 U.S.C. § 636(b)(1); Fed. R. Civ. P. 72(b);  *In re Griego*, 64 F.3d 580, 583 (10th Cir. 1995).  A

general objection that does not put the District Court on notice of the basis for the objection will

not preserve the objection for *de novo* review.  "[A] party's objections to the magistrate judge's report and recommendation must be both timely and specific to preserve an issue for de novo review by the district court or for appellate review."  *United States v. One Parcel of Real Property Known As 2121 East 30th Street, Tulsa, Oklahoma*, 73 F.3d 1057, 1060 (10th Cir. 1996).  Failure to make timely objections may bar *de novo* review by the District Judge of the Magistrate Judge's proposed findings and recommendations and will result in a waiver of the right to appeal from a judgment of the district court based on the proposed findings and recommendations of the magistrate judge.  *See Vega v. Suthers*, 195 F.3d 573, 579-80 (10th Cir. 1999) (District Court's decision to review a Magistrate Judge's recommendation *de novo* despite the lack of an objection does not preclude application of the "firm waiver rule"); *International Surplus Lines Insurance Co. v. Wyoming Coal Refining Systems, Inc.*, 52 F.3d 901, 904 (10th Cir. 1995) (by failing to object to certain portions of the Magistrate Judge's order, cross-claimant had waived its right to appeal those portions of the ruling);  *Ayala v. United States*, 980 F.2d 1342, 1352 (10th Cir. 1992) (by their failure to file objections, plaintiffs waived their right to appeal the Magistrate Judge's ruling).  *But see, Morales-Fernandez v. INS*, 418 F.3d 1116, 1122 (10th Cir. 2005) (firm waiver rule does not apply when the interests of justice require review).

DATED at Denver, Colorado this 10th day of November, 2014.

BY THE COURT:


s/Craig B. Shaffer
United States Magistrate Judge